CAROLINA GLASS COMPANY *v.* STATE OF SOUTH CAROLINA.

SAME *v.* MURRAY ET AL., CONSTITUTING THE STATE DISPENSARY COMMISSION OF SOUTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

SAME *v.* MURRAY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF SOUTH CAROLINA.

SAME *v.* MURRAY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

Nos. 12, 9, 205, 204. Argued January 20, 1916.—Decided February 21, 1916.

A glass manufacturing company, which had furnished supplies to the State and various county dispensaries of South Carolina, presented, pursuant to statute providing therefor, its claim for balance due to the State Dispensary Commission appointed to close up the business

and which found that the glass company had been overpaid on previous settlements an amount exceeding its claim; and, after allowing the claim, found the glass company was indebted to the State for a specified amount, and entered an overjudgment therefor which the State attempted to collect; the glass company appealed to the state Supreme Court, and also instituted independent proceedings in the state and Federal courts to restrain the members of the Commission from enforcing the overjudgment or from withdrawing funds from the county dispensaries and to recover sums so withdrawn against the individual members of the Commission. From the adverse judgment of the District Court, writs of error were taken from this court and also from the Circuit Court of Appeals. All the cases were considered together by this court, and *held* that;

The State Dispensary Commission had jurisdiction to consider, find and offset claims of the State against one claiming for supplies furnished to the dispensaries; and, even though it had no power to render an overjudgment, it did not deprive the claimant of its property without due process of law by making such offset.

The state court did not err in holding that although the overjudgment was rendered without authority by the Commission, that fact did not affect the power of the Commission to withdraw funds from the county dispensaries as they were state funds and subject to its control.

The glass company, as creditor of the State, could not assert rights against the withdrawal by state officers of funds of the State under their control in regard to which the State had not consented to be sued; and the withdrawal in this case did not amount to the impairment of contract obligations within the meaning of § 10, Art. I, of the Federal Constitution.

The funds of the State Dispensary of South Carolina involved in these actions were funds of the State (*Murray* v. *Wilson Distilling Co.*, 213 U. S. 151) and the suit against members of the State Dispensary Commission was in effect a suit against the State and could not be maintained in the District Court of the United States.

Where there are no allegations of diverse citizenship and the jurisdiction of the Federal court is invoked solely on constitutional grounds, the writ of error issues direct from this Court and the Circuit Court of Appeals is without jurisdiction to review.

87 S. Car. 270, 285, affirmed.

197 Fed. Rep. 392; affirmed.

Writ of error to review 206 Fed. Rep. 635, dismissed.

THE facts, which involve the construction of the Dispensary Laws of South Carolina and rights of one claiming to have furnished supplies to the dispensaries, are stated in the opinion.

*Mr. William H. Lyles,* with whom *Mr. David W. Robinson* and *Mr. Jo-Berry S. Lyles* were on the brief, for plaintiff in error.

*Mr. Benjamin Lindsey Abney,* with whom *Mr. Thomas H. Peeples* was on the brief, for defendants in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

These suits grew out of the legislation by which South Carolina sought to control traffic in liquors. They involve closely related matters, were heard together, and, it will be convenient likewise to dispose of them. In *Scott v. Donald,* 165 U. S. 58; *Vance v. Vandercook,* 170 U. S. 438, and *Murray v. Wilson Distilling Co.,* 213 U. S. 151, the history and general purposes of the legislation are considered.

By act of 1892 the General Assembly created a State Board of Control, with power to supervise the traffic; also provided for a State Commissioner charged with the duty of purchasing and distributing liquors through local officers known as dispensers.

The statute of 1896 directed election, by the General Assembly, of the Board of Control and gave it power to make purchases and to appoint a Commissioner who should supply local dispensers selected by and under direction of County Boards. By an amending act of 1900 the Board then existing was abolished; a Board of Directors of the State Dispensary was created, with power to prescribe rules and regulations to govern dispensaries,

both State and County; and provision was made for the election of a Dispensary Commissioner. The new Board was required to purchase liquor for lawful use within the State; and general management and control of the State Dispensary was entrusted to the Commissioner.

A legislative committee was appointed in 1905 to investigate the State Dispensary. In 1907 the statute of 1896 was repealed; control through a state board was abolished and county boards substituted, clothed with authority to purchase "in the name of this State" all liquors to be sold within their several counties, "*Provided*, That the State shall not be liable upon any contract for the purchase thereof beyond actual assets of the Dispensary for which the purchase is made." At the same time another act created a State Dispensary Commission of five, gave it control of all funds, assets and property other than real estate of the State Dispensary, required it to investigate all facts concerning outstanding claims against the State Dispensary and, thereafter, to pay all just liabilities from dispensary assets which might come into its hands. This second act of 1907 was amended in 1908, and the Commission given "full power to pass upon, fix and determine all claims against the State growing out of dealings with the Dispensary; and to pay for the State any and all just claims, which have been submitted to and determined by it, and no other, out of the assets of the Dispensary which have been or may hereafter be collected by said Dispensary Commission: *Provided*, That each and every person, firm or corporation, presenting a claim or claims to said Commission, shall have the right to appeal to the Supreme Court, as in cases at law."

By act of February 23, 1910, findings of the State Dispensary Commission were declared to be final; any sum ascertained to be due the State was required to be deducted from whatever a county dispensary might owe such debtor; and authority was given the Commission to

command any county dispensary so indebted to turn over to it an equivalent amount of money. Notices of claims in favor of the State, creation of liens to secure the same, and enforcement of their payment were also provided for.

## NUMBER 12.

The history and disposition of this cause in the state tribunals sufficiently appear from parts of the opinion by the Supreme Court (87 S. Car. 270) quoted below, p. 279:

"The investigations of the committee [appointed 1905] resulted in an act, passed in 1907, authorizing the appointment of a commission, to be known as the State Dispensary Commission, whose duty it was to close out the entire business and property of the State Dispensary, collect all debts due, and pay 'all just liabilities' of the State growing out of said business. The Commission was given 'full power and authority to investigate the past conduct of the affairs of the dispensary.' It was also clothed with all the power and authority conferred upon the Committee, which had been appointed under the resolution above referred to. 25 Stat. [So. Car.] 835. The act of 1907 was amended in 1908 so as to give the Commission 'full power to pass upon, fix and determine all claims against the State growing out of dealings with the dispensary; and to pay for the State any and all just claims which have been submitted to and determined by it, and no other.' 25 Stat. 1289.

"Appellant presented to the Commission a claim for $23,013.75 as the balance due it by the State for bottles and demijohns furnished to the dispensary under contracts made with the board of directors from and including April, 1906, until the business was closed out by the Commission. Appellant had also furnished the dispensary practically all the bottles and demijohns used since about December, 1902; but all accounts prior to April, 1906, had been settled.

"Upon the filing of this claim, the Commission went into an investigation of all past dealings of appellant with the dispensary; and, after hearing a great deal of testimony and argument thereon, rendered its decision, dated Nov. 17, 1909, which will be set out in the report of the case.

"The conclusion and finding of the Commission was that, in pursuance of a conspiracy between some of the directors of the dispensary and some of appellant's officers or agents to defraud the State whereby legitimate competition was destroyed, appellant had a monopoly of the business of furnishing glass to the dispensary from the date of its beginning business, in 1902, until April, 1906; and that the prices paid it for glass during that period exceeded the fair market value thereof by $51,432.99. Therefore, allowing appellant's claim of $23,013.75, the Commission found that appellant was indebted to the State in the sum of $28,419.24, the difference between the amount of its claim and the sum it had fraudulently collected from the State.

"From that decision, this appeal was taken, under the provisions of the statute, giving every claimant the right of appeal to the Supreme Court, 'as in cases at law.' Appellant concedes that the jurisdiction of this court is limited in such cases to a review of alleged errors of law. . . .

\*          \*          \*          \*          \*          \*          \*          \*

"The next contention of appellant is that the Commission is not a court, but a special tribunal of limited power, and that it exceeded its authority in undertaking to fix and determine appellant's liability to the State, and then set off its claim against the liability so fixed. It is conceded that the Commission is not a court, though its duties necessarily involve, to some extent, the exercise of judicial functions, as is always the case where judgment and discretion are to be exercised. It was created under Section 2 of Article 17 of the constitution, which provides

that 'the general assembly may direct by law in what manner claims against the State may be established and adjusted.'

\*      \*      \*      \*      \*      \*      \*      \*

"The question, therefore, whether the Commission had authority to entertain a 'set-off' or 'counter claim' in favor of the State against a claimant, in the technical sense in which those terms are used in legal proceedings is not germane or material to the present inquiry. To what purpose should the Commission investigate, unless it announced the result of its investigation? We see no error, therefore, in the Commission stating its findings as the result of its investigation.

"The findings of the Commission, however, are controlling only in its determination of the non-liability of the State upon appellant's claim. They have not the force or effect of a judgment, concluding appellant in any other proceeding—such, for instance, as the State might institute in the proper court to recover the amount found by the Commission to be due it by appellant.

\*      \*      \*      \*      \*      \*      \*      \*

"The judgment of this court is that the decision of the Commission upon plaintiff's claim against the State be affirmed, . . ."

Manifestly, we think, the Supreme Court affirmed the Commission's action only in so far as it declined to approve the glass company's claim—there was no final determination of the State's right to recover over against the company.

Error is assigned concerning supposed Federal questions upon the theory that there has been "in practical effect an adjudication of the validity of the alleged claim of the State arising out of the ended transactions prior to April, 1906, and a satisfaction of such a judgment by the confiscation of plaintiff in error's property; that is, its claim against the State for goods furnished since 1906."

This theory is entirely out of harmony with the Supreme Court's opinion, which holds the validity of possible demands against the glass company remains wholly undetermined and that, acting within its plain powers, the State had only refused to recognize and discharge a claim against itself. The argument of counsel proceeds upon a fundamental misconception. We find no error in the judgment below, and it must be affirmed.

### NUMBER 9.

By this original proceeding begun in the Supreme Court of South Carolina, March 4, 1910, the Carolina Glass Company sought to restrain any effort to collect the so-called overjudgment for $28,419.24 pronounced by the Dispensary Commission under circumstances narrated *supra* (cause No. 12); and also to prevent the Commission from demanding or receiving sums of money alleged to be due the company from certain county dispensaries or interfering with payment of such indebtedness.

Quotations from the opinion below (87 S. Car. 270, 285) will adequately disclose the issues involved.

"These arise principally out of an act approved February 23, 1910, and what was done by the defendants under the provisions of that act, which, it will be noted, was passed subsequent to the decision of the Commission upon the claim of the plaintiff. The provisions of the first five sections of the act pertinent to this case are, in substance: That, in addition to the powers conferred by all previous acts, the Dispensary Commission shall have power to pass upon, fix and determine claims of the State against any person, firm or corporation heretofore doing business with the State Dispensary, and settle and receipt therefor; that the findings of the Commission under its provisions shall be final, and, upon the finding by the Commission that any person, firm or corporation is indebted to the State, the dispensary auditor and officials

having charge of the funds of any county dispensary which may be indebted to such person, firm or corporation, shall pay to the Commission the amount so found to be due the State, or so much thereof as the funds in their hands due to such person, firm or corporation will pay, and the receipt of the Commission shall be a sufficient voucher therefor; that the Commission may, by its order, stop the paying out of any funds of any county dispensary by any officer having charge thereof. Sections 7 and 9 of the act are as follows: [They are copied in margin.] [1]

. "Within a few days after the approval of the act, to wit, on February 26, 1910, the Commission, by its attorneys, filed in the office of the clerk of the Court for Richland county, in which county plaintiff owned real estate, a notice, headed or entitled, *The State* v. *Carolina Glass Co.*, and signed by the Attorney General and other counsel

---

[1] SEC. 7. "The State Dispensary Commission is hereby empowered to pass all orders and judgments and do any and all things necessary to carry out the purposes of this act; and all judgments rendered by them for any claim due the State shall be a lien on the property of the judgment debtor situated within this State, and a transcript of said judgment shall be filed in the office of the clerk of the Court of Common Pleas in each county where any property of such judgment debtor is situated."

SEC. 9. "In all cases pending before the said State Dispensary Commission, upon any claim or claims against any person or persons or any corporation or corporations owning any real estate in any county in this State, the said Commission shall file in the office of the clerk of court in each county where such real estate is situated a notice of the pendency of such cases, and the said notice so filed shall be full notice to all persons whomsoever claiming any title to or lien upon such real estate acquired subsequent to the filing thereof, and the debt found by said Commission to be due the State shall have priority over the claims of all creditors, except creditors secured by mortgage or judgment entered and recorded prior to the filing of such notice, and the said real estate, in the hands of any person or persons whomsoever, shall be liable for the payment of such debt so found to be due the State."

representing the State. The notice was as follows: 'Notice is hereby given to all whom it may concern, that the above stated cause has been instituted, and is now pending before the State Dispensary Commission for the recovery against the Carolina Glass Company of $29,000.00, the amount which has been found to be due from the said defendant to the State of South Carolina owing to overcharges made by said defendant in selling goods to the State Dispensary, and this notice is given in accordance with the terms of an act of the legislature passed in February, 1910, and duly approved by the Governor.' About the same time, notice was served on the plaintiff, pursuant to the provisions of the act, that the Commission would proceed to pass upon, fix and determine the claim of the State against the plaintiff on account, of the overcharges growing out of its dealings with the dispensary. Notice was also served on the County Dispensary Board of Richland county, requiring that board to pay to the Commission the amount due by said board to the plaintiff.

"Another feature of the case grows out of an agreement alleged to have been made between the attorneys for the plaintiff and the attorney representing the State with regard to payments for shipments of glass made by plaintiff to the county dispensaries after November 20, 1909. . . .

\*       \*       \*       \*       \*       \*       \*       \*

"Under the provisions of the Constitution (Art. VIII, Sec. 11) and statutes (25 Stat. 463) the county dispensaries are conducted 'under the authority and in the name of the State.' Therefore, the officers in charge of them are agents of the State and the funds arising from the sale of liquors through them are the funds of the State, and the debts due for goods sold to them are the debts of the State. In exercising the powers conferred upon it by the legislature, the Dispensary Commission is also the agent and representative of the State, 'subject to no interference,

except that of the General Assembly itself,' and a suit brought against it is, in effect, a suit against the State. *State* v. *Dispensary Commission,* 79 S. Car. 316, 329, 60 S. E. Rep. 928. As the State cannot be sued without its consent, no court has power to interfere with or direct the disposition of the State's funds in the hands of its agents, unless it appears that they are acting without authority of law, or are refusing to recognize and obey the law to the detriment of private rights. . . . . In ordering the funds in the hands of the officers of the county dispensaries due to the plaintiff turned over to itself, the Commission acted within the limits of its authority and discretion conferred upon it by the legislature, and this court has no power to interfere. From the foregoing, it will be seen that it is unnecessary to inquire or decide whether there was an agreement between the attorneys for plaintiff and the attorneys for the State as to the collection of the amounts due plaintiff from the county dispensaries for shipments made prior to November 20th, or what the agreement was, or whether it has been violated. The Dispensary Commission is the sole arbiter of the rights of the plaintiff, if it has any, with regard to that matter.

\*  \*  \*  \*  \*  \*  \*  \*

"So long, therefore, as the action of the Commission was confined to the investigation of all dealings, past and present, with the dispensary, and the determination of the just liabilities of the State growing out of them, it was, as we have seen, based upon constitutional authority, and was valid and binding. But we find no authority in the Constitution for the legislature to provide by law how claims of the State against others shall be established or adjusted, except through the courts. We conclude, therefore, that in so far as the act of 1910 attempts to confer upon the Commission power to pass final judgment upon the claim of the State against the plaintiff, it is unconstitu-

tional, null and void. And, as the lien which the act attempts to create is based upon the unauthorized act of the Commission, it is likewise null and void."

Defendants were accordingly enjoined from asserting a lien upon the company's property and the notice filed in Richland County was directed to be cancelled; but the Commission's power to remove funds from county dispensaries was upheld.

Plaintiff in error now maintains the so-called overjudgment of November 17, 1909, was void; that by reason of claims against them it had contract and property rights in money held by the county dispensaries; and that removal of funds therefrom by the State Dispensary Commission impaired contract obligations in violation of § 10, Article I, Federal Constitution, and deprived it of property without due process of law.

It was distinctly adjudged by the Supreme Court that the Dispensary Commission was without power to pronounce the overjudgment; that it was invalid and could not be enforced. In view of repeated holdings by that court and our opinion in *Murray* v. *Wilson Distilling Co.,* 213 U. S. 151, it is clear that funds of county dispensaries were state funds, and, as such, subject to control by the Dispensary Commission. Their removal, therefore, violated no right which the glass company could assert—the State had not consented to be sued. The judgment of the court below must be affirmed.

### NUMBER 205.

The Carolina Glass Company instituted this proceeding at law in the United States District Court, South Carolina, December 13, 1911, to recover judgment against individual members of the Dispensary Commission for sums of money said to have been unlawfully withdrawn by them from county dispensaries which held the same for plaintiff's benefit. It is alleged that for supplies furnished partly be-

fore and partly after February 23, 1910, these county dispensaries became lawfully indebted to the company for more than $19,000, and that the money in their keeping was held in trust to pay such sum; and further:

"That the said defendants, undertaking to proceed under section 6 of the Act entitled 'An Act to further provide for winding up the affairs of the State Dispensary,' approved the 23d day of February 1910, [copied in margin] [1] as this plaintiff is informed and believes, demanded from the County Dispensary Boards for the County of Clarendon, the County of Richland and the County of Georgetown, the sums of money alleged in paragraph six of this complaint, amounting in the aggregate to the sum of nineteen thousand and eighty-four and 38/100 dollars then due to this plaintiff by said several County Dispensary Boards, as alleged in said paragraph six, and unlawfully and wrongfully received the said sums of money from said several County Dispensary Boards, claiming that they were entitled to the same on account of the above mentioned illegal offset found by said State Dispensary Commission to be due by this plaintiff as aforesaid; which action this plaintiff alleges was wholly without authority of law, as the provisions of said section 6 of the Act of February 23d, 1910, were unconstitutional, null and void, as constituting an effort, unwarrantably and without authority, to confiscate the property of this plaintiff without due process of law, the provisions of said section being

---

[1] SEC. 6. "In any and all cases where the State Dispensary Commission has heretofore found any amount due the State by any person, firm or corporation on account of dealings with the State Dispensary, the several County Dispensary Boards now existing, and all boards and other officer or officers in charge of any money due any such person, firm or corporation on account of any dealings with any and all County Dispensaries heretofore existing, shall, upon demand, pay to the State Dispensary Commission a sufficient amount, or so much thereof as may be on hand, to cover the amount so found to be due the State."

in violation of section 10 of Article I of the Constitution
of the United States, and also of the Fourteenth Amend-
ment to the Constitution of the United States; and, fur-
thermore, in violation of the express contract and agree-
ment entered into by this plaintiff with the defendants
above named as above alleged."

Holding it in effect a suit against the State, the Dis-
trict Court dismissed the cause (197 Fed. Rep. 392); and
it is here upon direct writ of error. We are of opinion that
the action of the court below was correct. And in view of
what has been said above and our opinion in *Murray* v.
*Wilson Distilling Co.*, further discussion of the questions in-
volved would not be profitable. The judgment is affirmed.

## Number 204.

This writ brings up a judgment rendered by the Circuit
Court of Appeals, Fourth Circuit, affirming the same final
judgment of the District Court considered in No. 205,
*supra.* 206 Fed. Rep. 635. There is no allegation of di-
verse citizenship and the trial court's jurisdiction was in-
voked solely upon the ground that the controversy in-
volved application of the Federal Constitution.

In such circumstances the Circuit Court of Appeals is
without jurisdiction to review. *Union & Planters' Bank*
v. *Memphis*, 189 U. S. 71, 73. Its judgment is accordingly
reversed and the cause remanded with directions to dismiss
the writ of error improperly entertained.

*Judgments in Nos. 12, 9 and 205, affirmed; judgment in*
*No. 204 reversed and remanded to the Circuit Court of*
*Appeals for the Fourth Circuit with directions to dis-*
*miss writ of error for want of jurisdiction.*