Argued January 13; reversed February 16, 1937

# FEDERAL LAND BANK OF SPOKANE *v.*
# SCHERMERHORN ET AL.

(64 P. (2d) 1337)

In Banc.

534

*I. H. Van Winkle*, Attorney General (Willis S. Moore, Assistant Attorney General, on the brief), for the State of Oregon.

*Dana E. Brinck* and *E. C. Prestbye*, both of Spokane, Wash. (T. W. Miles, of Medford, on the brief), for respondent.

ROSSMAN, J. The sole issue presented by this appeal is whether the State of Oregon can be made a party defendant in suits praying (1) for the foreclosure of mortgages, and (2) that the state's right in the property, whatever it may be, be declared inferior to the rights of the mortgagee plaintiff.

The complaint's sole references to the State of Oregon are in the caption, where its name appears as a party defendant, and in a paragraph which states:

"The defendants above named, and each and all of them, claim some right, title, lien or interest in the property in plaintiff's mortgage described, but their interest, if any, in and to said property is subsequent and junior to the right and lien of plaintiff."

The prayer asks that the mortgage be foreclosed and that all of the defendants be barred of whatever rights they may possess in the property described in the mortgage.

As indicated in the preceding statement, the state, through its attorney general, appeared specially and moved that service upon it be quashed. It contended that the state "cannot be sued in the state courts without its consent, and such consent has never been given." The motion was denied and the state appeared no further. After an order of default had been entered a decree was signed which recited that the state's interest in the property was "junior, inferior and subject to the lien of the plaintiff herein."

It will be observed that the pleadings do not delineate what interest, if any, the appellant claimed in the property described in the plaintiff's mortgage. However, the attorneys have informed us that the state's interest arises from the fact that in a criminal action it recovered a judgment for $633.70 against the defendant G. L Schermerhorn, who, together with his wife, signed the note and mortgage held by the plaintiff. Section 13-1116, Oregon Code 1930, provides that a judgment in favor of the state for costs and disbursements in criminal actions "must be docketed as a judgment in a civil action and with like effect, as provided in § 2-1601 of the Code of Civil Procedure." The part of § 2-1601 which is material follows:

"Immediately after the entry of judgment in any action the clerk shall docket the same in the judgment docket. * * * From the date of docketing a judgment, as in this chapter provided, or the transcript thereof, such judgment shall be a lien upon all the real

property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein. * * *''

Section 14-1019, Oregon Code 1930, provides:

''* * * In all cases of the commission or attempt to commit a felony, the state has a lien, from the time of such commission or attempt, upon all the property of the defendant, for the purpose of satisfying any judgment which may be given against him for any fine on account thereof, and for the costs and disbursements in the proceedings against him for such crime; provided, however, such lien shall not attach to such property as against a purchaser or incumbrancer, in good faith, for value, whose interest in the same shall have been acquired before the docketing of the judgment against the defendant.''

Section 6-105, Oregon Code 1930, provides:

''* * * Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party * * *.''

Section 6-502, Oregon Code 1930, which is a part of the legislative enactments providing for the foreclosure of liens upon property, provides:

''Any person having a lien subsequent to the plaintiff upon the same property or any part thereof, * * * shall be made a defendant in the suit, * * *''

Article IV, § 24, Constitution of Oregon, provides:

''Provision may be made by general law for bringing suit against the state, as to all liabilities originating after or existing at the time of the adoption of this constitution; * * *''

As we have already stated, the state appeared specially for the purpose of challenging the court's juris-

diction over it. The plaintiff makes no contention that when the attorney general joined with the plaintiff in volunteering the above information concerning the nature of the state's interest he thereby waived the state's immunity from suit and conferred jurisdiction upon the court. It will be observed that the constitution vests in the legislature, not in the attorney general, authority to waive the state's immunity. The authorities cited in 59 C. J., States, p. 300, § 459, and p. 323, § 481, indicate that the attorney general, in the absence of legislative authorization, has no power to waive the state's immunity, even if he should desire to do so.

The problem that confronts us, therefore, is whether or not a mortgagee may name the state as a party defendant and force it to (1) contest or concede the interest of the plaintiff in the property described in the complaint; and (2) defend the interest which the state claims in that property.

The plaintiff seems to concede that the constitutional provision above quoted renders the state nonsuable except with its permission, but insists that in the legislative enactments above quoted consent that suit may be brought against it in mortgage foreclosure suits and suits to quiet title will be found by implication.

In *Christian v. Atlantic & N. & C. R. R. Co.*, 133 U. S. 233 (10 S. Ct. 260, 33 L. Ed. 589), the federal supreme court seems to have foreseen the filing of this suit, for in that decision it not only spoke of the difficulty that facts of the kind disclosed by our record present but also pointed out the legal principles controlling such a situation. We quote from the decision the following:

"There is a class of cases, undoubtedly, in which the interests of the State may be indirectly affected by a judicial proceeding without making it a party. Cases

of this sort may arise in courts of equity where property is brought under its jurisdiction for foreclosure or some other proceeding, and the State, not having the title in fee or the possession of the property, has some lien upon it, or claim against it, as a judgment against the mortgagor, subsequent to the mortgage. In such a case the foreclosure and sale of the property will not be prevented by the interest which the State has in it; but its right of redemption will remain the same as before.''

But the plaintiff contends that the quoted language was unnecessary to the decision of the case. The facts in that suit were: The State of North Carolina had subscribed for railroad stock, and to pay for its subscription had issued bonds pledging for their payment the public faith, the stock itself and any dividends which might be declared upon it. Subsequently it defaulted in payment of interest upon the bonds. The plaintiff, an owner of several of these bonds, instituted the suit under review and prayed that the bonds be declared a lien upon the stock owned by the state, that the dividends received by the state from the stock be applied upon the bonded indebtedness, and that, if the amount thus received be insufficient, the stock be sold for the benefit of the bondholders. He made as parties defendant two of the state's officials, but not the state. After making the statement above quoted, the court held that the state was a necessary party to the suit and that, in its absence, the claim was unenforceable. It pointed out that the state could not be sued by a private party without its consent. In *Cunningham v. Macon & Brunswick R. R. Co.*, 109 U. S. 446 (27 L. Ed. 992, 3 S. Ct. 292), the court indicated that a state's interest in property cannot be determined in litigation unless it waives its immunity from suit and voluntarily appears.

The situation before the court in *American Trust & Savings Bank of Albuquerque v. Scobee,* 29 N. M. 436 (224 P. 788), was substantially similar to the one before us. The court held that the suit could not be maintained. The facts were that one M. E. Hickey had entered into a contract with the New Mexico commissioner of lands whereby he undertook to purchase a tract of state-owned land at a price of $142,882.26. A provision of the contract reserved to the state all minerals in the land. Plaintiff, as successor in interest to Hickey, filed a bill to quiet title to the land, claiming that the commissioner, in reserving to the state the mineral in the land, had exceeded his authority. He did not name the state as a defendant. The defendants demurred upon the ground that the state was a necessary party. In affirming the lower court's decision, which sustained the demurrer, the opinion above cited stated:

"The state, before its contract can be canceled or reformed, must be before the court and in these circumstances the state had not given its consent to such action."

The New Mexico court, in the decision just reviewed, relied, in part, upon *Sanders v. Saxton,* 182 N. Y. 477 (75 N. E. 529, 1 L. R. A. (N. S.) 727, 108 Am. St. Rep. 826). In that case the plaintiff, claiming to be the owner of a tract of land, instituted suit against state officials, but not against the state, for the purpose of having cancelled tax deeds which had been executed by those officials. The decision stated that "the only reason for omitting to make the state a party in this case is that it could not be made a party." It held that reason wholly insufficient as a basis for avoiding the state's immunity from suit.

In *Northwestern Mutual Life Insurance Co. v. Nord-
hues,* 129 Neb. 379 (261 N. W. 687), the facts were that
the Northwestern Mutual Life Insurance Company held
a mortgage upon property which the State of Nebraska,
one of the defendants, had purchased from the mort-
gagor and which the state since its purchase had used
for highway purposes. The plaintiff sought the fore-
closure of its mortgage. The state challenged the juris-
diction of the court and pointed out the fact that the
legislature had not authorized the institution of the
suit. Thus, the situation was somewhat similar to that
before us. In the Nebraska case the state held a deed,
but the property, according to the complaint, was sub-
ject to the lien of the plaintiff's mortgage. In the in-
stant case the state does not claim to possess a deed,
but apparently possesses a lien upon the fee which, ac-
cording to the complaint, is subject to the plaintiff's
mortgage. The lower Nebraska court foreclosed the
plaintiff's mortgage against all of the defendants in-
cluding the state. The decision above cited, in reversing
the resulting decree, said:

"We are impelled by the great weight of authority
to hold that this is a suit against the state which can-
not be maintained without legislative permission."

*Mount Vernon v. People,* 147 Ill. 359 (35 N. E. 533,
23 L. R. A. 807), was a proceeding by an Illinois city
to confirm a special tax assessed for the purpose of
paying the cost of some street improvements. One of
the blocks affected by the proceedings was owned by
the state and upon it stood the supreme court building.
This property was assessed its purported proportion-
ate share. The question before the court was whether
the tax could be imposed upon the state. The Illinois
constitution provided: "The state of Illinois shall never
be made defendant in any court of law or equity." The

city claimed that the proceedings were in rem and that, hence, the constitutional provision had no application. In rejecting this contention, the decision stated:

"The statute requires that notice of the assessment shall be sent by mail to the owner of the property, and that notices shall be posted and published. * * * The owner has a right to appear in response to the notice, and file objections to the report of the commissioners. A hearing is had, and evidence is introduced. * * * Although no judgment *in personam* is rendered against the owner, yet it cannot be said that he is not a defendant in view of the provisions made for his notification. * * * We think that, when the state is thus called into the county court to defend a proceeding against its property, it is made a defendant, in the sense contemplated by the constitutional prohibition."

The only decision which we have been able to find that appears to take a contrary view is *Elliott v. Van Voorst et al.,* Case No. 4,390, 8 Fed. Cas. 538, being a decision by Justice Grier. In that case the facts were that one Van Voorst, owner of a tract of land, sold it October 15, 1836, to one Innis, who gave a purchase money mortgage to Van Voorst. Later, Innis conveyed his equity of redemption to one Swartwout, a federal employee. In 1839 Swartwout defaulted to the government, and then the latter seized the lot and at the public sale bid it in in satisfaction of its claim against Swartwout. In 1847 the solicitor of the treasury conveyed the government's title to one Corcoran, who, in 1858, conveyed it to the plaintiff. Swartwout, while in possession, defaulted in the payment of his mortgage indebtedness to Van Voorst and the latter instituted suit to foreclose. In it he alleged that the United States owned the equity of redemption and prayed that a notice be served on one Green, United States attorney for New Jersey. The

notice was served, and, according to the statement of facts preceding the decision, "the district attorney appeared and filed an answer, admitting the charges of the bill, and submitting to the court to take care of the interests of the United States in the mortgaged premises." At the hearing the court foreclosed the plaintiff's mortgage and ordered that all of the defendants "be debarred and foreclosed from all equity of redemption." Upon the foreclosure sale the sheriff sold the property to Van Voorst. The latter then laid out the tract in lots and sold the lots to various persons who later became the respondents in the suit under review. Twenty years after the mortgage had been foreclosed the plaintiff instituted a bill for the redemption of the above-described mortgage, claiming that, since the federal government was nonsuable, its equity of redemption was not extinguished in the above suit. In dismissing this bill, the decision, after noting a distinction between the property owned by the federal government in its corporate capacity and property held for governmental purposes, stated:

"It does not follow that when the government officers purchase land in the name of the United States to secure a debt, as any individual or private corporation might do, that it thus ousts the jurisdiction of the state to tax it, or any manner affects the liens or rights of mortgagees in such lands. * * * She cannot compel a mortgagee to the hopeless remedy of a petition to congress to redeem. The courts of New Jersey cannot thus be ousted of their jurisdiction and duty to assist the mortgagee to have his mortgage satisfied, and the mortgaged premises sold for that purpose. When the government, in the exercise of the rights and functions of a civil corporation, purchases lands to secure a debt, the accident of its sovereignty in other functions cannot be set up to destroy or affect the rights of persons claiming a title or lien on the same lands.

\* \* \* When Van Voorst came in to the court of chancery, he had a clear right to have the mortgaged lands sold to satisfy his mortgage. The court was bound to furnish him a remedy. The land mortgaged was within the jurisdiction of the court. The only difficulty in the case was, that the title of the mortgagor, who should be made a party to the proceeding and have an opportunity to show that lien was paid or discharged, was vested in the United States, quoad hoc, a foreign corporation, and not within the jurisdiction of the court. It could not be compelled to appear or submit itself to such jurisdiction, so neither could any nonresident individual or corporation. \* \* \* In this case the court of chancery of New Jersey had jurisdiction over the thing or land mortgaged; it could not compel the United States government to appear and submit itself to the judgment, or render any judgment that it should pay money; but it can prescribe what notice should be given to the mortgagor or owner of the equity of redemption, and how it should be given. \* \* \* The decree demanded nothing of the United States. It is only for a sale of the mortgaged premises, to satisfy a legal lien. After thus refusing to redeem, after full notice, the government ought to be estopped. \* \* \* I am of opinion, therefore, that the court of chancery of New Jersey had jurisdiction to effect a sale of these mortgaged premises, in satisfaction of the lien; \* \* \* It may be said there is no precedent in this country for precisely such a case as that before the chancellor. The answer to this may properly be, 'It is time there was one.' ''

It will be observed that in the decision just reviewed the federal attorney actually appeared and filed an answer which not only admitted the averments of the complaint but joined in the prayer that the court adjudicate the interests of the parties. He certainly could have intervened for the purpose of having the government's interest determined, and the course he took was tantamount to that.

The only decisions which we have found concerning the right of a court to adjudicate the interests of a sovereign in property, and which cited *Elliot v. Van Voorst,* supra, are the two which we shall now review. *First National Bank v. Long,* Case No. 4,780, 9 Fed. Cas. 43, a suit to foreclose a mortgage made by one Long to the plaintiff, came before the court upon a motion that the federal district attorney be required to enter the appearance of the United States as one of the parties defendant. The government was a judgment creditor of Long. In dismissing the motion, the decision stated:

"I do not think the court has any power to enter any such order, or to entertain such a motion as that. * * * I think—I only make this by way of suggestion—that the court can enter the following order if the complainant wishes it: that the United States shall enter its appearance in this case, and plead, answer or demur to the bill by a given time and direct that a copy of this order shall be served upon the district attorney, and also upon the attorney general, or some other government officer, and then if the government does not enter its appearance, it will be a question for you to determine whether you will take a default against them or not."

The decision continued by stating that since the government "has entered the arena as a property holder, or rather as a lien holder, that it could be treated like any other person."

*Meier v. Kansas Pacific Railway Co.,* Case No. 9, 394, 16 Fed. Cas. 1320, was a bill to foreclose a mortgage on the property of a railway company upon which the United States had liens. The plaintiff moved that notice be addressed to the attorney general notifying him of the suit, requesting that he state whether the

government claimed any right in the property, and whether it desired an adjudication of its rights. In sustaining the motion, the court referred to *Elliot v. Van Voorst*, supra, but said, "We do not thereby commit the court to the proposition that it can, on the final hearing, pronounce a decree against the United States without an authorized appearance by the attorney general. This question is reserved."

Thus, the only two decisions which have cited *Elliot v. Van Voorst*, supra, did not deem themselves justified in holding that a court may force the United States to submit itself to the court's jurisdiction. These two decisions merely authorized the plaintiff to notify the government's officers that a suit concerning property in which the government claimed an interest was pending. The second of the decisions expressly reserved for future determination the question of what could be done if the government failed to submit a pleading.

■ It is clear from the above decisons that this is a suit against the state, and that the circuit court was without power to adjudicate the state's interest unless consent had been granted. As Mr. Justice Holmes said in *The Western Maid*, 257 U. S. 419 (66 L. Ed. 299, 42 S. Ct. 159), "legal obligations that exist but cannot be enforced are ghosts that are seen in the law, but that are elusive to the grasp." But the plaintiff insists that in the statutes above quoted the state has granted consent that in suits of this character it may be sued. It claims that the consent is expressed by implication, and cites *Warren Bros. Co. v. Kibbe*, 43 Fed. (2d) 582; *James Millar Co. v. Commonwealth*, 251 Mass. 457 (146 N. E. 677); *McKeown v. Brown*, 167 Iowa 489 (149 N. W. 593); and *Whitley v. Murphy*, 5 Or. 328 (20 Am. Rep. 741).

In the first place, it is to be observed that the complaint does not allege the nature of the state's interest and that the state has filed no answer. Therefore, we do not know from the record whether the statutes aforementioned are or are not applicable to the interest of the state. But let us assume for the sake of considering the plaintiff's citations that the nature of the state's interest is such as the attorneys describe. In *Warren Bros. Co. v. Kibbe,* supra, the action was not against the state, but against the highway commission of Oregon. It was brought by the holder of a patent upon a paving composition to recover royalty. The highway commission in its contracts for the improvement of state highways had inserted a provision that any royalty would be paid by the commission, and that it would indemnify the contractor against claims. One Huber, a contractor, pursuant to a contract with the commission, paved a road and was then sued by the Warren Bros. Company for an infringement of an alleged patent. He was defended by the attorney general. The validity of the patent was sustained. Then the action above cited was brought for the purpose of recovering the royalty. The court deemed the action one instituted against a state agency to compel it to perform a plain official duty. It pointed out that a statute provided that when the commission let contracts for the use of patented pavements the commission should pay the royalty direct to the patentee and relieve the contractor of that liability. It found that the commission had the necessary funds. It pointed out that the statute required the attorney general to investigate the validity of patents and if he found a patent to be of doubtful validity, the commission was authorized to afford the contractor the necessary protection. The decision also pointed out that the attorney general

owed a duty to prosecute and defend suits concerning the validity of patents and that both the statute and the commission's contracts imposed upon the commission a liability to pay royalties for the use of patented pavements. Under these circumstances, the decision held that the state had impliedly consented that the highway commission be sued for royalties.

*James Millar Co. v. Commonwealth,* supra, was a petition for the assessment of damages which the plaintiff had sustained when the commonwealth took his wharf for the use of a state agency. The statute creating the agency authorized it to acquire lands, wharves and buildings by purchase or eminent domain. It also provided:

"The Commission shall pay all damages to property sustained by any person, firm or corporation by the taking of any land, buildings, rights or easements or by any other thing done by the Commission. Any person, firm or corporation sustaining damages as aforesaid, and failing to agree with the Commission as to the amount thereof, may have the same assessed * * * ."

The court found that this statute "by implication" authorized an action against the Commonwealth.

*McKeown v. Brown,* supra, was a petition by one who claimed to be the sole heir of James Murray, deceased, to establish her right to receive from the state treasurer the estate of the deceased which had escheated. She made as defendants the state's treasurer and auditor. The treasurer filed an answer in which he alleged that he no longer possessed the funds of the escheated estate. Answering affirmatively he claimed an inheritance tax if the fund was given to the plaintiff. Although the state was not named as a party

to the proceedings, it filed an answer which denied the averments of the petition. In sustaining a decree for the plaintiff, the decision stated:

"The act of the state in entering a voluntary appearance in the suit and in filing answer to plaintiff's claim upon its merits is a clear waiver of its right to deny its consent to the jurisdiction of the court."

The decision expressed a belief that the proceeding fell within the category of those which may be maintained against public officers for the purpose of compelling them to perform their duties. Further, the court said:

"Even if the state were a necessary party it would be no great stretch of construction to hold that the enactment of such a statute, recognizing the right of the heir to establish his identity after the money had been placed in the school fund, and authorizing the court, as we think it does, to enter whatever judgment is necessary to make the right effective, is to all intents and purposes a consent by the state to submit its adverse claims, if any it has, to the adjudication of such court."

*Whitley v. Murphy,* supra, was a suit by the widow of one A. H. Whitley to enjoin the collection of costs recovered by the state against him in a criminal action. Whitley had appealed to the supreme court from his conviction, but died pending the appeal. In the widow's suit she alleged that fraud had been practiced in the taxation of costs. The decision held that if the cost was illegal the plaintiff had a right to have the taxation corrected, but that the averments were insufficient. Besides the State of Oregon the appropriate county officials, who were charged with the illegal conduct, were the defendants. The decision does not indicate whether the state's appearance had been authorized.

■■ Statutes which it is claimed waive the state's immunity from suit are generally construed strictly: Cooley's Constitutional Limitations (8th Ed.), footnote, page 23, and 42 A. L. R., annotation, page 1475. In a preceding paragraph we quoted the material portions of the statutes upon which the plaintiff relies. We find nothing in the above authorities which indicates that these statutes waived the state's immunity from suit. The term "in person" found in §§ 6-105 and 6-502, Oregon Code 1930, clearly was not intended as an expression of consent to the institution of suits against the state.

■ Next, the plaintiff calls attention to Article I, § 10 of the Oregon Constitution, which provides:

"* * * Every man shall have remedy by due course of law for injury done him in his * * * property * * *,"

and to Article I, § 18, which provides:

"Private property shall not be taken for public use * * * without just compensation * * *."

It argues that, since these provisions are self-executing, authority is here expressed for the maintenance of this suit. These two provisions, together with Article IV, § 24, Oregon Constitution, which provides that suit cannot be instituted against the state without its consent, are parts of our original Constitution. This is persuasive proof that they are not in conflict with one another. Under similar constitutional provisions it has been held that the state need not provide any means by which a suit can be brought against itself: *Carolina Glass Co. v. South Carolina,* 240 U. S. 305 (60 L. Ed. 658, 36 S. Ct. 293). See to same effect *Platt v. Newberg,* 104 Or. 148 (205 P. 296). In our opinion, this contention is without merit.

It follows from the above that the circuit court erred when it overruled the state's motion, and also erred when it incorporated in its decree the provisions regarding the state. The decree should be reversed.

BEAN, C. J., and BAILEY, CAMPBELL, BELT and RAND, JJ., concur.

KELLY, J., did not participate in this decision.