SESSUMS et al. v. W. T. CARTER & BRO. et al.

No. 3345.

Court of Civil Appeals of Texas. Beaumont.

July 13, 1938.

Rehearing Denied Oct. 1, 1938.

William McCraw, Atty. Gen., H. Grady Chandler, Asst. Atty. Gen., Henry H. Brooks, of Austin, Bryan, Suhr, Bering & Bell and Fouts, Amerman & Moore, all of Houston, and Russell Rentfro and Henry S. Moore, Asst. Attys. Gen., for appellants.

Baker, Botts, Andrews & Wharton, Dillon Anderson, Vinson Elkins, Weems & Francis, and John C. Townes, all of Houston, and V. A. Collins, of Livingston, for appellees.

O'QUINN, Justice.

We preface this opinion with the following quotation from the brief of appellants, Short, Gholson and Sullivan, hereinafter referred to as appellants: "The Attorney General has no money to prosecute a suit in Polk County to recover this land claimed by the State to belong to the Permanent School Fund of Texas. He does not have any surveyors at his disposal. His personnel is far too inadequate to send them over the State to try cases. The State is tied, hand and foot, unless the applicants supply the cash, the evidence and technical assistance." The other appellant—all defendants below—is the Hon. William H. McDonald, Commissioner of the General Land Office, in his official capacity.

This suit was filed in Polk County on the 9th day of June, 1937, by appellees, W. T. Carter & Brother, plaintiffs below, against appellants, the Commissioner of the General Land Office, and certain other parties not necessary to name, defendants below. We take the following statement of the nature of appellees' petition from appellants' brief: "Plaintiffs' petition discloses that they claim to be the owners of certain land which is alleged to constitute a part of the Andres Morales League in Polk County, Texas; that the defendant Land Commissioner is asserting that this land does not constitute a part of said league, but that, on the contrary, it is unsurveyed public school land; that the defendants, other than the Commissioner, have applied to the General Land Office for mineral leases thereon under the provisions of the second paragraph, Section 8, of Article 5421c, Vernon's Annotated [Civil] Statutes; that unless he is restrained, the Commissioner will issue such leases to some or all of the defendants; that even though the land in controversy is not a part of the Morales League, and in fact belongs to the State, that nevertheless, it is not subject to lease by the defendant applicants under a preference right, but must be sold to the highest bidder, and that the claims of the defendants constitute a cloud on plaintiffs' title. The prayer is that such cloud be removed, that the Commissioner be enjoined, both by interlocutory order and upon final hearing, from issuing any leases to the other defendants, and that similar injunctions issue against each of the other defendants restraining them from prosecuting or conveying their files or from accepting any mineral leases from the State of Texas, and that such files and all assignments thereof be canceled."

On the 17th day of June, 1937, the State of Texas filed suit in trespass to try title in the district court of Travis County against appellees and all parties named as defendants in the case at bar, except the Land Commissioner, and certain other parties not necessary to name, to recover the title and possession of the very land claimed by appellees in their petition filed in Polk County. Though appellants were named defendants by the State in its action as filed in Travis County, that suit was filed for their benefit, and, as disclosed by the quotation we have made from their brief, appellants are "financing" both suits, and furnishing "the evidence and technical assistance". In answer to the suit at bar, appellants and the Land Commissioner filed pleas in abatement, pleading the pendency of the Travis County suit, pleas to the jurisdiction of the Polk County district court, general and special denials, and certain other pleas not material to this appeal.

On a full hearing, both on the pleadings and on the evidence, on the 13th day of December, 1937, the district court of Polk County overruled the pleas in abatement and of jurisdiction, and granted appellees a temporary injunction to remain in force until this case is tried on its merits, restraining the Land Commissioner from issuing a mineral lease to appellants on the

land described in appellees' petition, and restraining appellants from further prosecuting their claim of right to a lease on the land, from conveying their "files" as a claim of right to a lease, and from accepting any mineral lease from the State of Texas. The appeal was prosecuted from that order.

The basic facts of the appeal may be stated as follows: The Andres Morales league of land in Polk County was titled by the Mexican Government on the 30th day of August, 1835; the Mary Thomas league, adjoining the Morales on the N. B. line, was titled September 23, 1835. The location of these two leagues on the ground is recognized by the General Land Office, and this location marked on its official maps. Many junior surveys, adjoining these two leagues on all four sides, have been located on the ground and patented by the State of Texas with reference to these two leagues of land, and their location fixed upon the ground as adjoinders to these two leagues of land. As shown by the maps of the General Land Office, all land adjacent to these two leagues has been granted by the State of Texas, and patents duly issued to the claimants, with reference to the location of the two leagues on the ground. Appellees and their predecessors in title, claiming title to the Morales league, as its location is indicated and shown by the maps of the General Land Office, have been in undisputed possession of all the land as located on the ground by the official maps, and have claimed, used, and enjoyed the land, and have assumed all the burden of its ownership, from the 30th day of August, 1835, without the assertion of an adverse title, until appellants began asserting the claim put in issue by appellees' petition, shortly before the institution of this suit. Likewise, the owners of all the adjoining junior surveys have been in possession of their land, claiming and enjoying it, and assuming the burden of its ownership, from the date of the issuance of their respective titles. As shown by the official maps of the Land Office, and by the claims and possession of those asserting title to the land, there is no "vacant" land adjacent to the Morales and Thomas leagues, nor adjacent to any of the surveys that adjoin these two leagues—that is to say, the official maps of the Land Office indicate no vacancy. As shown by the official maps, the State has long since parted with all its right, title, claim, and interest in and to the Morales and Thomas leagues, and the adjacent junior surveys, as their location is affirmatively designated upon the ground by the official maps of the Land Office.

I. & G. N. Survey No. 15 was located and surveyed in 1876, as adjoining the Morales league on the south. In December, 1936, immediately after the discovery of oil on I. & G. N. Survey No. 15, appellants, and certain other parties purporting to act under the provisions of Article 5421c, Vernon's Ann.Civ.St., Acts 1931, c. 271, went upon the Morales league, as its location is shown upon the ground by the official maps, and, by a resurvey of this land, purported to find a vacancy of about 3000 acres. This showing was made by tearing the Morales and Thomas leagues loose from the surveys located on their south and west by calls for their S. B. and W. B. lines, and then by moving these two surveys east from their map location, and spreading them over and consuming many small surveys located on their north and east by calls for their E. B. and N. B. lines; appellees make the statement that the resurvey of the Morales and Thomas leagues, as made by appellants, would disturb "probably fifty" junior surveys. On the "files" made by appellants, based upon their resurvey of these two leagues of land, they made application to the Land Commissioner to lease from the State of Texas the land claimed by them to be vacant. The Land Commissioner was prepared to recognize their claim, and to issue to them the mineral lease applied for and, on his affirmative statement made in his brief, would have declared the 3000 acres of land vacant, and would have issued a mineral lease thereon to appellants, but for the temporary injunction issued against him and appellants by the district court of Polk County.

Only two issues are presented by this appeal: (1) Is the State a necessary party to appellees' cause of action in Polk County; (2) under Article 5421c, did the Land Commissioner have the power—was the discretion vested in him—to recognize the vacancy claimed by appellants, and to issue to them a mineral lease thereon? The first question is answered by the second. If the Land Commissioner was vested by law with a discretion to recognize and declare vacant the 3000 acres of land pointed out to him by appellants, the State was a necessary party to appellees' cause of action. While the State was not made a party defendant by name, yet the Land Commissioner was made a defendant in his official capacity.

If he had the power to act in his official capacity in the matters put in issue by appellees' petition, a final judgment against him in his official capacity would in effect be a judgment against the State; a judgment against him in his official capacity, denying him title to the claimed vacant land, would be res judicata of the title against the State. McDonald v. Humble Oil & Refg. Co., Tex.Civ.App., 78 S.W.2d 1068; York v. Alley, Tex.Civ.App., 25 S. W.2d 193; Colquitt v. Gulf Production Co., Tex.Com.App., 52 S.W.2d 235; McDonald v. Simons, Tex.Com.App., 280 S.W. 571; Camp v. Gulf Production Co., 122 Tex. 383, 61 S.W.2d 773. The following additional authorities are cited on this point by the Land Commissioner: Louisiana ex rel. v. Jumel, 107 U.S. 711, 2 S.Ct. 128, 27 L. Ed. 448; Cunningham v. Macon & B. R. Co., 109 U.S. 446, 468, 3 S.Ct. 292, 609, 27 L.Ed. 992; Hopkins v. Clemson Agricultural College, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890, 35 L.R.A.,N.S. 243; In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Christian v. Atlantic & N. C. R. Co., 133 U.S. 233, 10 S.Ct. 260, 33 L.Ed. 589; Carolina Glass Co. v. South Carolina, 240 U.S. 305, 36 S.Ct. 293, 60 L.Ed. 658; Fitts, Atty. Gen. State of Alabama v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535; Smith v. Reeves, Treas. State of California, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140; New Mexico v. Lane, 243 U.S. 52, 37 S.Ct. 348, 61 L.Ed. 588; In the Matter of the State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057; Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268, Dec. 6, 1937; Cargile v. New York Trust Co., 8 Cir., 67 F.2d 585, in which writ of certiorari was denied. 292 U.S. 625, 54 S.Ct. 630, 78 L.Ed. 1480.

But, if Article 5421c gave the Land Commissioner no power to act in the premises, then appellants in entering upon the Morales and Thomas leagues, on their location as shown by the maps of the General Land Office, were mere trespassers, and, in threatening to recognize, as justified by law, the resurvey of these two leagues of land, the Land Commissioner became a joint trespasser with appellants; and his threatened act to grant the mineral leases to appellants was a simple tort to which the ·State was not a party. A judgment against him as a tort-feasor would not bind the State, and the State would not be a necessary party in an action against him as a tort-feasor. Davis v. Gray, 16 Wall. 203, 21 L.Ed. 447; United States v. Lee, 106

U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363; Tindal v. Wesley, 167 U. S. 204, 17 S.Ct. 770, 42 L.Ed. 137; Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367, 371; Cyclopedia of Federal Procedure, Vol. 1, Sec. 27. The State's relation to this suit is not determined by the facts as they may be developed upon the trial. If, on the record as presented to the Land Commissioner by appellants, the Land Commissioner was without authority to declare the land vacant and to issue to them a lease thereon, then the State was not a necessary party.

The power of the Land Commissioner to act implies the danger of misuse by him of his power; in that event, under the provisions of Article 5421c, appellants would have a prior right to purchase the lease on this land. The act of the Commissioner in recognizing the vacancy, if he had the power to declare a vacancy, would create a presumption of vacancy, a presumption of a superior title in appellants holding under the State, thereby casting a cloud upon appellees' title. To remove that cloud the State would be a necessary party. De Grazier v. Panell Oil Corp., Tex.Civ.App., 109 S.W.2d 1109; Colquitt v. Gulf Production Co., Tex.Com.App., 52 S.W.2d 235. Appellees would have to assume the burden of clearing their title of the shadow cast thereon by the act of the Commissioner. On general principles, without legislative aid, it is not quite clear what appellees' remedy would be; appellants would be holding under the State and the State, being a necessary party to cancel the lease, could be made a party only by the grace of the Legislature. On this statement, if the Commissioner was without power to act, appellees were entitled to their temporary injunction because they would have no adequate remedy at law. In this connection we say that, on the record before us, in all the annals of our Land Office as reflected by the reported cases, no instance has been ·called to our attention of so great and clear an abuse of official discretion as now threatened by the Land Commissioner. Title to land, marked on the ground, claimed, used and occupied for a hundred years by its claimants, and taxes paid by them thereon, would be disturbed by the capricious exercise of the Land Commissioner of his official discretion, and that on the ground boldly declared by appellants in language for the world to read: "The State is tied, hand and foot, unless applicants ·supply the cash, the evidence and

the technical assistance." But, in legal effect, the boldness of appellants' claim is immaterial—if the Commissioner was vested with authority to act.

If we correctly construe the brief of the Attorney General, the discretion of the Commissioner to act on the facts of this record is an open question. On that point we shall now examine Article 5421c as the charter of appellants rights. The second paragraph of Section 8 of this article reads: "Any person who discovers an unsurveyed area of school land which has not been listed on the records of the Land Office as school land, and is not in actual conflict on the ground with land previously sold or appropriated and which appears on the official Land Office map as unsurveyed land, may apply in writing to the county surveyor and have the same surveyed, and after the field notes thereof have been returned to the Land Office and approved and filed with the Land Commissioner, shall have a preference right for sixty (60) days thereafter to purchase a mineral lease thereon at the minimum price fixed by the Land Commissioner, in addition to the other consideration provided herein. (Acts 1931, 42nd Leg., p. 452, ch. 271.)" We think this paragraph of section 8 is controlling, and that all other sections of this article, regulating the rights of vacancy hunters and the powers of the Land Commissioner to act thereon, must be construed in the light of, and to effectuate, the quoted provisions of section 8; that is to say, it is our construction of Art. 5421c that the activities of vacancy hunters must be confined to lands "which appear on the official Land Office map as unsurveyed land". The conclusion must necessarily follow that, where the land pointed out by the vacancy hunter as vacant land, discovered by his "cash" and his "evidence and technical assistance" is within a grant previously made by the State, as shown on the official Land Office maps, the Commissioner has no discretion to act; the entry upon such land by a vacancy hunter would be a trespass, and any act by the Commissioner of the General Land Office recognizing the resurvey made by the vacancy hunter would make him a joint tort-feasor with the trespasser.

That the Commission of Appeals, in Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259, said: "As to the official maps in the General Land Office, they represent nothing more than the draftsman's and the Commissioner's opinions and conclusions from the records and other available information as to the location of the various surveys with reference the one to the other" [page 263], is not in point in this case; the weight of the Official maps in this proceeding is measured by the provisions of Sec. 8 of 5421c copied above.

If appellees prosecute their suit to judgment, the issues before the trial court will in no way involve or jeopardize the title of the State to the claimed vacancy; it will still lie with the Attorney General, if in his judgment the land is vacant, to file the necessary suits to protect the State's title.

A judgment in this cause in favor of appellees against the vacancy hunters would free the Attorney General of incubus of their prior claim.

Juencke v. Terrell, 98 Tex. 237, 82 S.W. 1025, is stongly persuasive in support of our construction of Sec. 5421c, but we do not agree with appellees that it is controlling. Weatherly v. Jackson, supra, urged by appellants, is not in point; that case was decided under a statute that vested the Commissioner with a discretion denied him by the amendment of 1931.

Pendente lite, appellees filed in the Travis county suit their pleas in abatement, on the ground that the prior filing of this suit vested the Polk county district court with exclusive jurisdiction of all matters in issue in the Travis county district court. On the theory that the State was a necessary party to this suit—the Polk county suit—appellees pleas in abatement were overruled by the Travis county district court; the State is not a party to this—the Polk county suit— and without its consent cannot be made a party. On the theory upon which appellees' pleas in abatement were submitted in the Travis county district court, they were properly overruled. But, to prevent a conflict between the courts in trying the controverted issues, the Travis county district court should abate the further prosecution of the suit until all issues, determined by this opinion, are finally litigated by appeal to the Supreme Court, in the event the parties invoke the jurisdiction of that court.

Appellants based their pleas in abatement against the further prosecution of this suit on the ground that, by overruling appellees' pleas in abatement, the Travis county district court had acquired exclusive jurisdiction of all matters in is-

sue in this case, citing Anderson Co. v. Young, 128 Tex. 631, 101 S.W.2d 798. That case would be controlling if the issues in the two cases were the same. The suit in the Travis county district court is an action in trespass to try title, putting in issue the State's title to the land claimed by appellees in this suit, while this suit in no way puts in issue the State's title to the land. A judgment in the case at bar would not be res judicata of a single issue presented by the Travis county district court.

Appellees claim an estoppel by reason of certain proceedings attending the passage of Senate Resolution No. 7, and certain issues based upon the parol testimony of Senator Gordon Burns and Hon. Grady Chandler, Assistant Attorney General. We do not quote this resolution nor the parol testimony of the witnesses, because they are without point in this litigation. No right of appellees was put in jeopardy by anything done by any one in connection with the passage of Senate Resolution No. 7.

■ The Attorney General has the right, to be exercised by him upon his official discretion, to intervene in this case in Polk county; if he should intervene and prevail in the trial of the case, his judgment for the land would be burdened with the preferential rights of appellants and their "cash" and their "evidence and technical assistance". On his discretion, he can stay out of the case; in that event, if appellees succeed, the State's title will not be put in jeopardy; appellants can then retire from this litigation and devote their "cash" and their "evidence and technical assistance" to locating vacancies that fall within the provisions of Article 5421c.

Of course, if our Supreme Court takes jurisdiction of this case as against our judgment, and holds that the Land Commissioner has the power to recognize the vacancy and to grant mineral leases to appellants, then all we have said would fall to the ground. In that event, appellees could not further prosecute this suit in Polk county without the presence of the State as a party, and the State can be made a party, by name or in the official capacity of its Land Commissioner, only by the intervention of the Attorney General. If the Supreme Court takes jurisdiction, the proper construction of Senate Resolution No. 7 and the facts attending its passage will be a question of law, on the undisputed facts, for its decision.

Nothing we have said in this case constitutes a limitation upon the right of the Attorney General to select a forum in which to litigate the State's title to the claimed vacancy.

It follows that the judgment of the lower court granting the temporary injunction should be affirmed and it is accordingly so ordered.

Affirmed.