Ruth J. BUTTS, Next Friend of Mike Butts; Barbara Reagan, Next Friend of Pat Reagan; Catherine Perrine, Next Friend of Douglas Perrine; Majorie Lynn, Next Friend of Janet Lynn; Margaret Roth, Next Friend of Judy Roth; and Mrs. Elaine Case, Next Friend of Phil Thompson, Plaintiffs,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT and Nolan Estes, Defendants.

Civ. A. No. 3-3471-C.

United States District Court
N. D. Texas,
Dallas Division.

Dec. 5, 1969.

Marvin Menaker, R. M. Ginsberg, and W. D. Masterson, Dallas, Tex., for plaintiffs.

Franklin E. Spafford and Warren Whitham, of Spafford, Freedman, Hamlin, Gay & Whitham, Dallas, Tex., for defendants.

OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This is an action filed by the next friends of six minors. Said minors range in age from 15 years to 17 years and attend Dallas High Schools. They seek to enjoin the Dallas Independent

School District and Superintendent Nolan Estes from enforcing the School District's policy of prohibiting the wearing of black armbands in the various Dallas Schools. At the request of the Defendants, this is only a ruling as to the temporary injunction. This Court denies such an injunction.

The Dallas Independent School District has a long standing policy which prohibits the wearing of attire of a disruptive nature in school. On October 15, 1969, the Plaintiffs and other students showed up at various Dallas schools wearing black armbands. The School District and Superintendent Estes determined that the armbands were disruptive attire and requested that they be removed. Several students complied with the request. Others did not comply and were asked to leave school until such time as they removed the armband.

The authority most often cited and referred to in this controversy was the Supreme Court Opinion, written by Mr. Justice Fortas, in Tinker v. Des Moines Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). This was an "armband case" involving three students, 13 years old, 15 years old, and 16 years old. They were suspended from school until they removed their armbands. The Supreme Court set forth some guidelines in this case which should be followed.

■ Before going into these guidelines and how they apply in the case before this Court, it might be well to state an old and established legal principle. That principle is that each case must be decided on its own set of facts. As quoted in 21 C.J.S. Courts § 209, p. 380, and footnoted by a considerable number of cases: "The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court * * *." That is to say, that the Court only rules on the facts in the case before it and any authority its decision may have only applies to the same or very similar facts.

In analyzing the *Tinker* opinion and what it stands for, the Court is attracted to a sentence in a part of the opinion, beginning immediately after the outline of the facts. The Court says: "* * * the wearing of armbands *in the circumstances of this case* was entirely divorced from *actually or potentially disruptive* conduct by those participating in it." (Emphasis added) "* * * in the circumstances of this case * * *" shows that the court only intended to be ruling on the particular facts before them. The rest of the sentence gives a preview of the major guidelines set out in the opinion: "* * * actually or potentially disruptive * * *." The opinion comes to a close with further language concerning the facts that were ruled on in that case:

"As we have discussed, the record does not demonstrate any facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities, and no disturbances or disorders on the school premises in fact occurred."

Throughout the opinion the Court makes the following statements:

"The problem presented by the present case * * * does not concern aggressive, disruptive action or even group demonstrations."

"There is here no evidence whatever of petitioners' interference, actual or nascent, with the school's work or of collision with the rights of other students to be secure and to be let alone."

"* * * the District Court made no such finding, [referring material and substantial interference with requirements of appropriate discipline] and our independent examination of the record fails to yield evidence that the school authorities had reason to anticipate that the wearing of the armbands would substantially interfere with the work of the school or impinge upon the rights of other students."

This was the type of facts for which the Tinker case is authority.

The case presently before this Court deals with armbands worn on and soon after October 15, 1969. That date had been declared a national moratorium day by various groups around the country. Also, in several parts of the country violence and unrest had developed even before *the event came to pass.* One of the chief causes of campus riots, which have spread to high schools and junior high schools in the last year or so, was unrest over the war in Vietnam. Although each plaintiff that testified stated he or she decided to wear the armband on his own, they all gave the same reason verbatim for wearing it. They all went to the same local moratorium gathering that same afternoon. And all but one or two of them would have left school early anyway to go to this gathering to promote the moratorium. Further, the Defendants introduced a sheet of paper which had the peace symbol (a circle and upside down "Y" in it), and a notice encouraging the taking part in the moratorium by boycotting jobs and school. At least one of the Plaintiffs had seen the circular and several of the Defendants' witnesses had seen it. One assistant principal testified he had been alerted as to the possibilities of boycotts and demonstrations in his school and a demonstration actually took place across the street from the school on the morning of October 15. From all of these circumstances the School District anticipated, and with good reason, that the wearing of armbands would substantially interfere with school work. These also show that, unlike the *Tinker* case, there was the real possibility of group demonstrations which in fact occurred at one school. In the words of Justice Fortas, in the *Tinker* opinion:

> "But conduct by the student, in class or *out of it,* which for any reason— whether *it stems from time, place, or type of behavior*—materially disrupts classwork or *involves substantial disorder* or invasion of the rights of others is, of course, not immunized by

the constitutional guaranty of freedom of speech." (Emphasis added)

There was substantial disorder before school began, where the demonstration took place. It is difficult for the court to imagine that such disorder did not materially interfere with school work for at least part of that day. Testimony showed that some students were restrained from entering into direct conflict with the demonstrators. This, along with evidence of threats and counter-threats, did not provide an environment in which children may be educated, which is, after all, the main goal of the School District. The facts here show a more aggravated situation than Justice Fortas described in the *Tinker* case.

In another school in Dallas the administration was informed of a bomb threat to occur on October 15, which was presented in such a way as to lead the school authorities to relate it to the moratorium movement. The assistant principal came to school early along with several men teachers on October 15 in order to check the school out and watch the building. Also, a policeman was present. This caused a considerable amount of tension and uneasiness on that day. It was reasonably anticipated that the armband wearing might be just the spark that would cause substantial disruption.

The situation throughout the District was of such concern to the Superintendent and other administrators that they formed teams to go to the various High Schools and observe and give assistance if anything developed. So, unlike the situation in *Tinker,* the school authorities were very concerned about disruption and had reason to anticipate problems if armbands were worn.

Another distinguishing characteristic between this case and the *Tinker* case is the attitude of the school administration. The Supreme Court pointed out in a footnote in the *Tinker* case that the school authorities were not afraid of a disruption but had enforced the regulation because they were against "the principle of the demonstration itself". The record

in this case is utterly devoid of any evidence that the school authorities had enforced the regulation because they were opposed to the principle involved. Superintendent Estes categorically denied that any such motivation existed on his part or the part of anyone else connected with the Dallas School District. The record in this case overwhelmingly supports the conclusion that the purpose of the prohibition was solely for the purpose of preventing disruption in the school during the school day. In fact, there were days set aside for students to discuss the Vietnam conflict in class because the District and its administrators strongly believed that the expressing of ideas and opinions on current issues is an important part of the educational process. This Court is of the opinion that the Dallas Independent School District is to be commended for not letting personal prejudices sway its regulations. It acted in the interest of its duty to educate those who were seeking an education.

■ Another quote from the *Tinker* case is indeed worthy of note: "First Amendment rights, *applied in light of the special characteristics of the school environment,* are available to teachers and students." (Emphasis added.) The Supreme Court recognized, as this Court must, that students in school are in a somewhat different situation than the man on the street. Therefore, their First Amendment rights have to be interpreted according to "the special characteristics" of the environment they are in. The simple fact of the matter is that in order to educate a large group of children there must be some type of orderly process. This process may infringe on a child's freedom of expression in varying degrees. Hopefully, the process will teach him how to reason, assimilate ideas, and generally think for himself. To date, the Dallas Independent School District has been one of the most up-to-date and qualified Districts in the Nation. It has maintained an admirable degree of order in these times when other large school systems are experiencing chaos and violence.

■ This is not a *Tinker* case fact situation. The Court should not interfere with the disciplinary actions of the School District which are designed to prevent disruption. It would be well to note, in closing, one last quote from the *Tinker* case. Justice Fortas says of the students that " * * * they themselves must respect their obligations to the State". It occurs to this Court that one obligation students have to the State is to obey school regulations designed to promote the orderly educational process.

This Court, on the foregoing grounds and in accordance with the guidelines set out by the Supreme Court, denies the temporary injunction sought by the Plaintiffs.