Benito AGUIRRE, Jr., and Nick Aguirre, By Next of Friend, Benito Aguirre, Sr., and Rafael Gonzalez, Jose Gonzalez and John Gonzalez, By Their Next Friend, Juan Gonzalez, Plaintiffs,

v.

TAHOKA INDEPENDENT SCHOOL DISTRICT, the Board of Trustees of the Tahoka Independent School District, Edward Bartley, President, Harold Reynolds, Superintendent of the Tahoka Independent School District, Clifton Gardner, Principal of the Tahoka High School, Robert Ryan, Principal of the Tahoka Junior High School, and Melvin Burks, Director of Guidance of the Tahoka Independent School District, Defendants.

Civ. A. No. 5–741.

United States District Court,
N. D. Texas,
Lubbock Division.

March 11, 1970.

Thomas J. Griffith, Bill H. Brister, Lubbock, Tex., for plaintiffs.

Harold Green and Calloway Huffaker, of Huffaker & Green, Tahoka, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

This is an action filed by the next friends of five minor children, individually and as a class, all of whom are students at Tahoka Junior High School and Tahoka High School, Tahoka, Texas. By this suit plaintiffs seek to enjoin the Tahoka Independent School District and its officials from enforcing the school district's regulation prohibiting students from wearing "apparel decoration that is disruptive, distracting, or provocative." The decorative apparel specifically involved in this suit are brown armbands. This opinion is concerned only with plaintiffs' prayer for temporary injunction against enforcement of said regulation pending final determination of the case.

From the testimony and evidence introduced in a hearing in open Court on March 2nd and 3rd, 1970, at which all parties and their attorneys were in attendance and presented arguments and authorities, the Court found the following pertinent facts:

The parents of plaintiffs and many other local people, mostly of Mexican-American descent, had become dissatisfied with certain educational policies and practices within the Tahoka school system. A group of these people known as "Concerned Mexican American Parents," had attempted to have these matters corrected by means of written correspondence and meetings with various school officials and attorneys advising the school. In a further effort to obtain redress of their grievances, these plaintiffs had also instituted a suit in this Court, Civil Action No. 5–675, alleging violation of their Civil Rights by the school policies and practices which were the subject of correspondence and meetings.

In expression and support of their view that the substance of their grievances was justified and worthy of corrective action by school officials, plaintiffs and other students wore brown armbands to school; the first such wearing being on February 12, 1970.

As of that date there were no dress regulations in effect within the Tahoka school system which would have been violated by armbands such as these. Immediately, however, the Board of Education met and promulgated a Supplement to the existing Student Handbook in which it was announced that "any act, unusual dress, coercion of other students, passing out literature, buttons, etc., or *apparel decoration that is disruptive*, distracting, or prevocative so as to incite students of other ethnic groups will not be permitted" (emphasis added). The date of said Supplement was February 13, 1970.

Further implementation of this "dress" regulation was achieved by Board of Education approval of a new procedure under which students could be temporarily suspended from school on the ground of "incorrigibility" for violation of the new dress regulation. This new disciplinary procedure was also dated February 13, 1970.

This Court found as a fact that although neither the dress regulation nor the disciplinary procedure specifically mentioned armbands and neither were limited to armbands or similar devices,

both actions by the Board of Education were precipitated by and directed at the wearing of brown armbands by students as well as other activities not involved in this suit.

The dress regulation and disciplinary procedures were made known to students and their parents, including plaintiffs and their next friends. Despite the knowledge that suspension was a likely consequence, plaintiffs and other students continued to wear armbands. At the date of hearing a total of seventeen students, plaintiffs included, had been temporarily suspended after having been given an opportunity to remove their armbands. The only condition required for reinstatement or lifting of suspension was the removal of the armbands.

A thorough and deliberate examination of the testimony of witnesses revealed to the Court that only isolated incidents of unrest or apprehension were attributable to the wearing of the brown armbands. A brief summary of these incidents follows:

A young girl testified that on one occasion in the gym several other girls attempted to force her to wear an armband, but did not persist when she refused. She was not harmed in any way, nor, by her own testimony, was she even frightened. Possible loss of friendship was the only disturbing outgrowth of this incident. A female gym-teacher, who was implied by defendants' counsel to have been connected with this incident, was called by the Court only to disclose that she had no personal knowledge of the incident or the seriousness of it.

On another occasion a female student called her mother to come to school to get her because she was afraid of something. It was never quite clear what was the cause for fright, if there was any actual fright. It could easily have been fear of being suspended from school for wearing armbands or a fear of someone wanting her to wear armbands. In any event, there was no evidence of force, threats, violence, nor harm to the girl.

Children of another family were kept home from school by their father because he was afraid of some unspecified trouble at school. As far as could be determined, these children did not wear armbands, were never forced to, nor were they involved in any disturbance related to armbands.

Finally, after both sides had rested, defendants' attorney, while presenting his closing argument, referred to a march or demonstration as further indication of school disruption. The hearing was recessed until the next day in order for defendants to produce competent evidence concerning this march or demonstration as the Court felt that such evidence was relevant and therefore should be presented. However, only one witness was called in this regard the next day and that witness was wholly unable to enlighten the Court on the march or demonstration. In any event, school activities were not disrupted by any march, demonstration, or rumors thereof.

■ These, then, represent the only actual indications of disruption. Of course, several of the school officials offered their conclusions or opinions that wearing of the armbands in violation of school policy was a disruption in and of itself. This Court does not so find.

As announced in open court at the conclusion of the hearing, this Court finds as a fact that there has been no showing that the wearing of the armbands by plaintiffs and the class they represent would materially and substantially interfere with the requirements of appropriate discipline or be disruptive of normal educational functions.

■ The facts as here found put this case on all fours with that decided by the United States Supreme Court in Tinker v. Des Moines Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Therefore, the law as announced in that decision controls here. This Court concludes that the

controlling law from *Tinker* is as follows:

"The wearing of an armband for the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment." *Tinker, supra* at 505, 89 S.Ct. at 736. The logic of such a conclusion is obvious when the symbol, the armband, is translated back into the expression which it symbolizes—"I support those in the community who advocate certain changes in the educational system"—and of that expression it is asked, "Is it within the protection of the First Amendment?" No room for doubt exists.

 The public school setting for the exercise of First Amendment rights by students is permissible but there must be a careful consideration of the special circumstances involved. Such consideration has led the Supreme Court to conclude:

Certainly where there is no finding and no showing that engaging in the forbidden conduct would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," the prohibition cannot be sustained. Burnside v. Byars, 363 F.2d 744, 749 (5th Cir. 1966). *Tinker* at 509, 89 S. Ct. at 738.

Here, there has been no such finding as would justify prohibition under this rule. Therefore, plaintiffs are entitled to temporary injunctive relief pending final determination of this cause. The other relief prayed for by plaintiffs will also be determined at that time.

Another matter deserving of comment is the fact that this Court is determined to pay more than lip service to the oft-quoted phrase that nothing done by the Court is intended to undermine the authority of school officials. Nothing in this opinion nor in the order of this Court is to be construed as in any way to limit or take away the authority of proper officials to regulate, administer and operate the Tahoka Independent School District and its schools. For that reason this Court retains continuing jurisdiction of this cause and will promptly hear and decide any alleged future disturbances and if it should appear that the facts and the laws justify such action, the temporary injunction here ordered will be revoked.

The final matter for those who may critically read this opinion is the observation that this holding is not contrary to that announced by Judge Taylor in Butts v. Dallas Independent School District, 306 F.Supp. 488 (N.D.Tex.1969). As previously stated, the facts in this cause are in line with those of *Tinker, supra*, while Judge Taylor found that "[t]he facts here [in Butts] show a more aggravated situation than Justice Fortas described in the Tinker case." *Id.* at 490. The instant case is distinguishable on its facts from *Butts* and a different result is to be expected.

Judgment has been entered in accordance with this memorandum opinion.

The Clerk will furnish a copy hereof to the attorneys for all parties in this case.