Joe Harold WILLIAMS et al., Plaintiffs,

v.

Lloyd EATON, as Football Coach of the University of Wyoming, et al., Defendants.

Civ. No. 5412.

United States District Court, D. Wyoming.

March 25, 1970.

Graves & Smyth and Weston W. Reeves, Cheyenne, Wyo.

Hatchett, Brown, Waterman & Campbell, Pontiac, Mich.

Jack Greenberg and Haywood Burns, New York City, for plaintiffs.

James E. Barrett, Atty. Gen. State of Wyo., Jack Speight, Spec. Asst. Atty. Gen., State of Wyo., Cheyenne, Wyo., for defendants.

ORDER GRANTING MOTION TO DISMISS (WITH FINDINGS).

KERR, District Judge.

This matter having come on regularly for hearing before the Court upon the Motion to Dismiss and/or Motion for Summary Judgment filed herein by the defendants, by and through their attorney, James E. Barrett, Attorney General, State of Wyoming, dated November 20, 1969, and the Court having read and considered respective briefs and written arguments submitted by the respective parties, filed with the Court under date of January 19, 1970, and having further considered the entire record in this proceeding, including all of the pleadings, the transcript of proceedings had, and evidence adduced before this Court under date of November 10, 1969, upon the plaintiffs' application unto the Court for a temporary restraining order and for convening a three-judge Federal panel, together with the supplementary proceedings and affidavits filed herein in support of the defendants' motion to dismiss and/or for summary judgment, and

**1344**

from the whole of the record, the Court doth find that the defendants' motion for dismissal of the plaintiffs' complaint should be granted on the grounds and for the reasons that the plaintiffs' complaint fails to state a claim upon which relief can be granted, and for the further reason that the plaintiffs' complaint and claim for damages is insubstantial and too speculative, and the Court doth specifically find, as follows, to-wit:

1. That each of the fourteen plaintiffs were members of the University of Wyoming football team on the morning of October 17, 1969, when, at the approximate hour of 9:30 o'clock a.m., the fourteen while dressed in civilian clothing, confronted Head Football Coach Lloyd Eaton and members of his coaching staff in Memorial Fieldhouse at the University of Wyoming, at which time each of the fourteen were wearing black armbands; that at that time the spokesman for the fourteen was the plaintiff Joe Harold Williams, who was then serving as a tri-captain of the University of Wyoming football team; that following football practice on the afternoon of October 16, 1969, Head Coach Lloyd Eaton spoke with Joe Harold Williams, at which time Coach Eaton was in possession of a copy of a letter dated October 14, 1969, addressed to Dr. William D. Carlson, President of the University of Wyoming, signed by Willie S. Black, as Chancellor of the Black Students Alliance, an organization on the campus of the University of Wyoming, demanding that:

(a) University officials at the University of Wyoming, as well as other member institutions in the Western Athletic Conference, not use student monies and university facilities to play host to and thereby in part sanction alleged inhuman racist policies of the Church of Jesus Christ of Latter Day Saints, hereinafter referred to as the Mormon Church.

(b) That athletic directors in the Western Athletic Conference refuse to schedule and play games with Brigham Young University so long as the Mormon Church continues such alleged policies.

(c) That black athletes in the Western Athletic Conference protest in some way any contest with Brigham Young University so long as the Mormon Church continues such alleged policies, and

(d) That all white people of good will, athletes included, protest with their Black fellows a policy allegedly clearly inhuman and racist and that the symbol of protest be the black armband worn throughout any contest involving Brigham Young University; and

(e) That Coach Lloyd Eaton made specific references to the aforesaid letter and advised Joe Harold Williams of the coaching rule prohibiting members of the University of Wyoming football team from participating in demonstrations and protests, and Coach Eaton advised said Joe Harold Williams that there would be no demonstrations or protests in relationship to the scheduled football game between Wyoming and Brigham Young University; that at the time of the aforesaid meeting and conference between Head Football Coach Lloyd Eaton and Joe Harold Williams, each of the fourteen plaintiffs were members of the Black Students Alliance, an organization on the campus of the University of Wyoming; that at the time of the aforesaid meeting, there was in existence a football coaching rule enumerated by the coaching staff at the University of Wyoming prohibiting members of the University of Wyoming football team from participating in demonstrations and protests and such rule was made well known to each of the fourteen plaintiffs during the Spring football practice of 1969, again during the Fall football practice of 1969, again specifically on October 14, 1969, and again at the conference between Coach Eaton and Joe Harold Williams held following practice on October 16, 1969.

2. That at all times commencing with the Spring football practice of 1969, to and until October 17, 1969, the fourteen plaintiffs were aware of the existence of the football coaching rule prohibiting members of the University of Wyoming football team from participating in protests and demonstrations; that during this entire time, none of the fourteen plaintiffs protested or objected to the football coaching rule, and during this time each of the fourteen plaintiffs accepted the benefits of athletic scholarships granted them by the University of Wyoming for their attendance and education at the University of Wyoming in return for their agreement to play football for the University.

3. That when the fourteen plaintiffs confronted Coach Lloyd Eaton in Memorial Fieldhouse, University of Wyoming, at Laramie, Wyoming, at the approximate hour of 9:30 o'clock a.m., on the morning of October 17, 1969, then and there dressed in civilian clothing, each of the fourteen plaintiffs were wearing black armbands in specific protest demonstration against claimed religious beliefs of the Mormon Church and Brigham Young University; each of the fourteen plaintiffs were then members of the University of Wyoming football team and were then in violation of the football coaching rule prohibiting members of that team from participating in demonstrations and protests; each of the fourteen plaintiffs were then and there using the tax-supported facilities and properties of the University of Wyoming—and, therefore, of the State of Wyoming, and undertaking a protest demonstration against the Mormon Church involving religious beliefs of that Church and Brigham Young University; that Coach Lloyd Eaton informed the fourteen plaintiffs that they were dismissed from the University of Wyoming football team.

4. That immediately following the confrontation between the fourteen plaintiffs with Coach Lloyd Eaton aforesaid, President William D. Carlson of the University of Wyoming and his ad-

ministrative staff undertook and conducted hearings into the dispute; President Carlson and his staff met and spoke with Coach Lloyd Eaton, Athletic Director Glenn Jacoby, and the entire University of Wyoming football coaching staff and during this conference Coach Eaton related to President Carlson that he had definitely applied the football coaching rule prohibiting members of the football team from participating in any demonstrations or protests in relationship to the nature of the protest demonstration then undertaken by the fourteen plaintiffs against an organized church or religion; that Coach Lloyd Eaton stated to President Carlson, which was thereafter related to the fourteen plaintiffs, that he would meet and discuss the return of the plaintiffs by meeting with them personally and individually; and that none of the plaintiffs elected or agreed in anywise to meet or speak with Coach Eaton individually.

5. That following the meeting with Coach Eaton, Athletic Director Jacoby and the football coaching staff, President William D. Carlson and his administrative staff then met with the fourteen plaintiffs and one Willie S. Black, Chancellor of the Black Students Alliance, an organization on the campus of the University of Wyoming; that this meeting commenced in the late morning of October 17, 1969, and continued into late afternoon of that day; that during the time of these meetings the fourteen plaintiffs made a number of remarks relating to claimed discriminatory racial policies of the Mormon Church and Brigham Young University as they relate to the black man; that during these meetings each of the fourteen plaintiffs were wearing the black armbands in protest-demonstration to claimed religious beliefs of the Church of Jesus Christ, Latter Day Saints, commonly known as the Mormon Church, and Brigham Young University.

6. President William D. Carlson of the University of Wyoming has testified that as a result of the hearings and con-

ferences which he and his administrative staff conducted that he, as President of the University of Wyoming, had the power and authority to overrule Coach Lloyd Eaton relating to this dismissal of the fourteen plaintiffs but that he had determined that the dispute, together with the possibilities of settlement thereof, should be heard and considered by the highest governing board of the University of Wyoming, the Board of Trustees.

7. That the defendant Coach Lloyd Eaton, Athletic Director Glenn Jacoby and the entire coaching staff, together with the fourteen plaintiffs herein and the aforesaid Willie S. Black were informed of the fact that an emergency-hearing would be held and conducted by the Board of Trustees of the University of Wyoming commencing at the approximate hour of eight o'clock p.m., on the evening of October 17, 1969, and that all of the interested and affected parties to the dispute would be heard; that the emergency-hearing of the Board of Trustees of the University of Wyoming was called by C. E. Hollon, President of the Board of Trustees; that due to wintery blizzard conditions, arrangements were made by the University administration and President C. E. Hollon of the Board of Trustees, to install microphones, a loud speaker and direct telephone hook-up communication with absent members of the Board of Trustees in such a manner that all statements made by parties appearing before the Board would be heard and considered and absent members could make inquiries; that Governor Stanley K. Hathaway, as an ex-officio member of the Board of Trustees, traveled from Cheyenne to Laramie, Wyoming, to attend the emergency-hearing; that the Board of Trustees convened and first met with the defendants Coach Lloyd Eaton, Athletic Director Glenn J. Jacoby and the entire University of Wyoming football coaching staff, at which time the Board of Trustees received all of the views, expressions of fact, opinions and explanations of these parties; that thereafter

the Board next met with the fourteen plaintiffs who were accompanied by one Willie S. Black, as Chancellor of the Black Students Alliance; that the plaintiff Joe Harold Williams and the said Willie S. Black acted and served as spokesmen for the fourteen plaintiffs, and the Board of Trustees met with the plaintiffs and the said Willie S. Black for a period of approximately two hours in the Conference Room of the Board of Trustees, during which time each of the fourteen plaintiffs were heard fully, and each of the plaintiffs fully and completely expressed their relation of the facts surrounding the dispute, their views, opinions and recommendations fully and completely; that during the period and time of their appearance before the Board of Trustees each of the fourteen plaintiffs were wearing black armbands in specific protest of certain claimed religious beliefs of the Mormon Church and Brigham Young University; that during the aforesaid conference between the plaintiffs with the Board of Trustees, certain of the plaintiffs stated that they insisted and made demand upon the Board of Trustees that they be permitted to wear the black armbands during the scheduled intercollegiate football game to be played at Memorial Stadium, Laramie, Wyoming, on the afternoon of October 18, 1969, between the University of Wyoming football team and the Brigham Young University football team, and none of the plaintiffs responded otherwise; that during the aforesaid meeting certain of the plaintiffs stated to the Board that they would not return to the University of Wyoming football team so long as the defendant Lloyd Eaton remained as Head Football Coach of the University of Wyoming, and none of the fourteen responded otherwise.

8. That following the formal appearance of the fourteen plaintiffs before the Board of Trustees, and in a final effort to arrive at some area of settlement of the dispute, Governor Hathaway and President Carlson spoke independently with the plaintiffs in President Carlson's executive offices adjoining the

Board of Trustees Meeting-Conference Room; that Governor Stanley K. Hathaway inquired of the plaintiffs whether they intended to wear the black armbands on the playing field during the University of Wyoming-Brigham Young University football game scheduled to be played at Memorial Stadium, Laramie, Wyoming, on the afternoon of October 18, 1969; that both Governor Hathaway and President Carlson have testified that the plaintiffs responded that they did intend to wear the black armbands; Governor Hathaway testified, corroborated by the testimony of President Carlson, that he inquired of the fourteen plaintiffs whether, ignoring the University of Wyoming-Brigham Young University football game, they would return to the University of Wyoming football team, and both Governor Hathaway and President Carlson testified that certain of the fourteen responded that they would not return so long as the defendant Lloyd Eaton remained as Head Football Coach and that none responded otherwise; that the remarks attributed to the plaintiffs were thereafter related to the Board of Trustees by both Governor Hathaway and President Carlson.

9. That during the deliberations by the Board of Trustees in relationship to the dispute, and after hearing each and all of the interested and affected parties, the Board of Trustees discussed the constitutional principle of separation of Church and State both as it relates to the United States Constitution and the Constitution of the State of Wyoming, and after full discussion and deliberation the Board of Trustees ordered the dismissal of the fourteen plaintiffs from the University of Wyoming football team primarily on the ground that should the University of Wyoming or its governing officials permit or allow the plaintiffs to appear on the playing field during the scheduled game on the afternoon of October 18, 1969, wearing black armbands in protest-demonstration to certain claimed religious beliefs of the Mormon Church and Brigham Young University, that the State of Wyoming, through the University of Wyoming and its governing officials, would be in violation of the mandate requiring complete neutrality relating to religion and non-religion and in violation of the principle of separation of Church and State; the Board further found that the football coaching rule was imposed for disciplinary purposes looking to the unity of the football team and that the plaintiffs had been well aware and had full knowledge of the existence of the coaching rule prohibiting members of the University of Wyoming football team from participating in demonstrations and protests during the opening of the spring football practice 1969, the opening of the fall football practice 1969, specifically on October 14, 1969, and again specifically on October 16, 1969, during which time all of the fourteen plaintiffs had received and accepted the benefits of their athletic scholarships to attend the University of Wyoming and that at no time did any of the fourteen plaintiffs object or protest in relationship to the aforesaid rule.

10. That at the time the Board of Trustees ordered the dismissal of the plaintiffs from the football team the Board of Trustees further directed that their athletic scholarships remain in full force and effect, subject to later review; that there is no evidence or proof in this record that any of the fourteen plaintiffs have in anywise been denied scholarship or grants-in-aid benefits from the University for the purpose of continuing their education, nor is there any proof that threats have been made by the University of Wyoming or its governing officials to so deny such benefits to any of the fourteen plaintiffs.

11. That thereafter the fourteen plaintiffs filed their complaint with this Court, under verification, dated October 29, 1969, in the nature of a Civil Rights Action against the State of Wyoming, Lloyd Eaton as Football Coach at the University of Wyoming, Glenn J. Jacoby as Athletic Director of the University of Wyoming, and each and all of the members of the Board of Trustees of the

1348

University of Wyoming and Dr. William D. Carlson, as President of the University of Wyoming, alleging that the plaintiffs had been denied rights, privileges and immunities secured by the Constitution and laws of the United States by the enforcement, operation and execution of the football coaching rule and order made by Head Football Coach Lloyd Eaton, then acting as an agent for the Board of Trustees, which said action and order was thereafter ratified and approved by official action of the Board of Trustees, an administrative agency of the State of Wyoming; each of the individually named defendants were sued in their official capacities together with the State of Wyoming; the plaintiffs complained that the action of dismissal from the University of Wyoming football team constituted a deprivation of the plaintiffs' right to peaceably demonstrate under the Constitution of the United States and that the plaintiffs were suspended and dismissed from the University of Wyoming football team without cause and for the sole reason that they wore armbands in peaceable and symbolic demonstration, then exercising their rights protected by the First, Ninth and Fourteenth Amendments of the United States Constitution; the plaintiffs prayed unto this Court for the issuance of a restraining order and, after hearing, the issuance of a preliminary and permanent injunction restraining the defendants from dismissing, suspending, disciplining or otherwise depriving the plaintiffs of rights secured to them by the First, Ninth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 3, 6, 7, 20 and 21 of the Wyoming State Constitution, and for an Order restraining the defendants and each of them from dismissing the plaintiffs and discouraging any professional scout, college official or other employer or agent from maintaining and having a favorable interest in the plaintiffs, for a declaratory judgment declaring that the rules and actions of the University of Wyoming are damaging and unconstitutional and that the said fourteen black athletes may not be suspended or dismissed for exercising rights which are guaranteed aforesaid, and for compensatory damages in amount of $75,000.00 per plaintiff, totaling one million fifty-thousand dollars ($1,050,000.00), together with punitive damages in amount of fifty thousand dollars ($50,000.00).

12. That thereafter the defendants executed and filed their verified answer and counterclaim, contending that this is not such an action requiring the convening of a Three-Judge Federal Court under the Civil Rights Statute, and that the plaintiffs are not entitled to any relief from the official and final action of their dismissal by the Board of Trustees, the highest governing board of the University of Wyoming, and that the constitutional issue, both under the Constitution of the State of Wyoming and the First Amendment to the United States Constitution involved in the facts of this case and dispute is that of the principle of separation of Church and State mandated and more specifically and critically applied to tax-supported public schools and institutions and tax-supported institutions of higher learning, together with the mandate guaranteeing free exercise and enjoyment of religious profession and worship without discrimination or preference and the mandate guaranteeing perfect toleration of religious sentiment and assurance that no inhabitant of the State of Wyoming shall ever be molested in person or property on account of his or her mode of religious worship; the defendants contended and allege that had the defendants, as governing officials of the University of Wyoming, an agency of the State of Wyoming, acceded to the demands of the fourteen plaintiffs that the fourteen plaintiffs, as members of the University of Wyoming football team be permitted to wear and display the black armbands during the intercollegiate football game scheduled between the University of Wyoming and Brigham Young University at Memorial Stadium, Laramie, Wyoming, on the after-

noon of October 18, 1969, in direct and specific protest-demonstration against certain claimed religious beliefs of the Mormon Church and Brigham Young University, that such action on the part of the governing officials, the defendants in this case, would have been directly violative of the First Amendment to the United States Constitution and various provisions of the Constitution of the State of Wyoming; further, the defendants alleged and pleaded immunity and prayed for dismissal of the plaintiffs' complaint, and filed counterclaim praying that this Court enjoin the plaintiffs and their attorneys and agents from making false and inflammatory statements casting scorn, ridicule and suspicion upon the defendants and each of them.

13. That, upon plaintiffs' application, this Court did proceed with an evidentiary hearing on November 10, 1969, upon plaintiffs' prayer for a temporary restraining order and plaintiffs' prayer for impaneling a Three-Judge Federal Court, and following said full and complete evidentiary hearing this Court did, under date of November 17, 1969, deny plaintiffs' prayer and request for a temporary restraining order and this Court did not find that this was a matter to be heard by a Three-Judge Federal Panel under the applicable provision of the Civil Rights Statute; that thereafter pleadings and the defendants' motion to dismiss and/or motion for summary judgment, together with petitions to file supporting and corroborative affidavits, and the filing of said affidavits, and the briefs in this case were presented to this Court, all of which were treated and considered by the Court.

Thereupon this court, upon consideration of the whole of the evidence, pleadings, and all matters contained in this file, including briefs and argument of counsel, doth find that the defendants' motion to dismiss should be granted on the grounds and for the following reasons, to-wit:

■ (1) The plaintiffs' complaint fails to state a claim upon which relief can be granted. Each of the plaintiffs, with the exception of James Isaac, are non-residents of the State of Wyoming. The State of Wyoming is specifically named, designated and served as a party defendant. The named defendants are sued in their respective official capacities as officers or agents of the University of Wyoming, an agency of the State of Wyoming. Plaintiffs have prayed for temporary and injunctive relief, declaratory judgment and damages both compensatory and punitive. By the Eleventh Amendment to the United States Constitution, it is clearly provided that the power of the federal judiciary cannot extend to any suit against one state by a citizen of another state. Through judicial construction, the Eleventh Amendment has been expanded so that the state is immune from suit in a federal court even if the suit is instituted by one of its own citizens, rather than by a citizen of another state. (Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; Fitts v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714). Whether a particular action constitutes a suit against a state within the prohibition of the Eleventh Amendment is determined not by the identity of the parties named as defendants of record, but by the essential character of the proceedings, the relief requested, and the result of the judgment or decree which may be entered. (Minnesota v. Hitchcock, 185 U.S. 373, 22 S. Ct. 650, 46 L.Ed. 954; Re New York 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057). The decision seemed clear that in both cases where suit is brought against a state, alleging unconstitutional conduct on the part of a governmental officer or officers, having for one of its purposes that of obtaining government funds, that governmental immunity applies. (Louisiana ex rel. Elliott v. Jumel, 107 U.S. 711, 2 S.Ct. 128, 27 L.Ed. 448; Murray v. Wilson Distilling Co., 213 U. S. 151, 29 S.Ct. 458, 53 L.Ed. 742; Carolina Glass Co. v. South Carolina, 240 U.S. 305, 36 S.Ct. 293, 60 L.Ed. 658;

Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L. Ed. 389; State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262). The State of Wyoming has not authorized, by legislative fiat, this action as required by the terms and provisions of Article 1, Section 8 of the Wyoming Constitution. There are no express statutes authorizing or permitting an action against the University of Wyoming, the State of Wyoming, or the governing officials of the University of Wyoming or its Board of Trustees in relationship to the subject matter of this suit. The governing officials and the Board of Trustees of the University of Wyoming serve as an arm or alter ego of the State of Wyoming without any funds or ability to respond in damages. The complaint filed herein does not contain any allegation that the defendants are personally liable. This action is, then, an action against the State of Wyoming and must be so treated. No consent by the State of Wyoming to submit itself to this suit has been granted. Furthermore, the plaintiffs have failed to comply with the terms and provisions of Article 16, Section 7 of the Wyoming Constitution, which provides that any monetary demand against the State of Wyoming must be submitted to the proper auditing officer by verification.

■■■■■ (2) The plaintiffs' complaint should be dismissed for lack of jurisdiction by this Court on the ground and for the reason that the claim for damages is insubstantial and totally speculative. Civil rights complaints, just as other complaints in civil actions in the federal courts, are not to be held insufficient unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim for damages which would entitle them to relief. (Jones v. Hopper, 10 Cir., 410 F.2d 1323; Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Keenan v. Looney, 10 Cir., 227 F.2d 878). It is the judgment of this Court that the plaintiffs cannot prove a set of facts in support of their claim for damages which would entitle them to relief. The plaintiffs were dismissed from the University of Wyoming football team following a full and complete emergency-hearing conducted and held by the highest governing body of the University of Wyoming, the Board of Trustees, following notice and opportunity for hearing. The action and order of dismissal by the Board of Trustees of the University of Wyoming was not predicated upon the existence or non-existence of any football coaching rule, but rather upon representations and facts presented and considered by the Board relating to the dispute involving the wearing of black armbands by the fourteen plaintiffs. The manner in which the emergency-hearing was conducted by the Board of Trustees afforded procedural due process to all of the interested and affected parties, and was fundamentally fair in the light of the total circumstances of this case. (Sigma Chi Fraternity v. Regents of University of Colorado, D.C., 258 F.Supp. 515). The Court doth find that the plaintiffs' complaint is insubstantial and that, based upon the test of credibility, the operative facts, from the whole of this record are:

(a) That the defendant Coach Lloyd Eaton's coaching rule prohibiting members of the University of Wyoming football team from participating in demonstrations and protests was well known and familiar to each of the fourteen plaintiffs as early as the spring football practice of 1969, again during the opening of the fall football practice of 1969, again, specifically on October 14, 1969, and again specifically on October 16, 1969, during all of which time the fourteen plaintiffs, as members of the University of Wyoming football team, accepted certain athletic scholarship benefits to obtain their education from the University of Wyoming under circumstances whereby they agreed to play football for the University of Wyoming subject to certain rules and regulations, and that at no time or in anywise prior to October 17, 1969, did any of the four-

teen plaintiffs object or protest or indicate their disapproval of the football coaching rule.

(b) That on the morning of October 16, 1969, the defendants Head Football Coach Lloyd Eaton and Dr. William D. Carlson, President of the University of Wyoming, each received hand-delivered letters dated October 14, 1969, written by Willie S. Black, as Chancellor of the Black Students Alliance, an organization on the campus of the University of Wyoming; that at this time each of the fourteen plaintiffs were members of the Black Students Alliance; that the letter constituted a detailed protest against certain claimed religious beliefs of the Mormon Church and Brigham Young University, which is owned and operated by the Church of Jesus Christ, Latter Day Saints; that the letter demanded that University of Wyoming officials terminate all contests with Brigham Young University and that black athletes wear black armbands during scheduled athletic events involving Brigham Young University, all in specific protest to religious tenets and claimed beliefs of the Mormon Church and Brigham Young University.

(c) That at the time the fourteen plaintiffs confronted the defendant Coach Lloyd Eaton and other members of the University of Wyoming football coaching staff in the Memorial Fieldhouse on the morning of October 17, 1969, then wearing the black armbands, plaintiffs were members of the University of Wyoming football team and therefore agents representing the University of Wyoming as members of said team; that at that time the fourteen plaintiffs were wearing the black armbands in specific protest demonstration against certain claimed and alleged religious beliefs of the Mormon Church and Brigham Young University, with intent on the part of the fourteen plaintiffs to demonstrate during the scheduled intercollegiate football game between the University of Wyoming and Brigham Young University, scheduled and to be hosted by the University of Wyoming in Memorial Stadium at Laramie, Wyoming, on the afternoon of October 18, 1969; that the defendant Coach Lloyd Eaton notified the plaintiffs that they were dismissed from the University of Wyoming football team for undertaking such demonstration-protest.

(d) That immediately following the fieldhouse confrontation between the fourteen plaintiffs and the defendant Coach Lloyd Eaton and members of the University of Wyoming football coaching staff, Dr. William D. Carlson, as President of the University, and his administrative staff, conducted hearings into the dispute; they met with the defendant Coach Lloyd Eaton, Athletic Director Glenn J. Jacoby, and the entire University of Wyoming football staff, and thereafter they met with the fourteen plaintiffs, accompanied by one Willie S. Black as Chancellor of the Black Students Alliance, and fully and completely explored all of the facts, circumstances and details of the dispute; that President William D. Carlson did not take action, and determined that the dispute, and all matters relative thereto, should be referred to the University of Wyoming Board of Trustees as the highest governing board of the University of Wyoming; that during the conferences and meetings between President Carlson and his administrative staff with the fourteen plaintiffs, said fourteen plaintiffs were at all times wearing the black armbands, made remarks and statements relating to the discriminatory racial policies constituting religious beliefs or claimed religious beliefs of the Mormon Church and Brigham Young University.

(e) That Clifford E. Hollon, as President of the University Board of Trustees, called an emergency-hearing of the Board of Trustees of the University of Wyoming, to commence on the evening of October 17, 1969, at the approximate hour of 8:00 o'clock p.m., in order to completely explore all matters involving the dispute in an effort to determine whether there was any area of settlement; that each and all of the interested and affected parties were notified of

the emergency-hearing, including the fourteen plaintiffs, and each of the fourteen plaintiffs did appear before the emergency-hearing conducted by the Board of Trustees in the Board of Trustees Conference Room, Old Main, Laramie, Wyoming, on the evening of October 17, 1969, which said hearing continued into the early morning hours of October 18, 1969; that at the time of their appearance before the Board of Trustees, aforesaid, the fourteen plaintiffs were accompanied by one Willie S. Black as Chancellor of the Black Students Alliance; that the plaintiff Joe Harold Williams and the said Willie S. Black acted and served as spokemen for the fourteen plaintiffs during the emergency-hearing conducted by the Board of Trustees; that the plaintiffs understood that the purpose of the emergency-hearing was to determine whether there was any area of settlement of the dispute insofar as the Board of Trustees was concerned; that both in the presence of the Board of Trustees in the emergency-hearing conference room, and later in the presence of Honorable Stanley K. Hathaway, Governor of the State of Wyoming and Ex-Officio member of the Board of Trustees, and Dr. William D. Carlson, President of the University of Wyoming and Ex-Officio member of the Board of Trustees, the plaintiffs stated that they were protesting against certain claimed religious beliefs of the Mormon Church and Brigham Young University, and the plaintiffs stated and declared,

(1) that they would not return to the University of Wyoming football team unless they be permitted and allowed to wear the black armbands during the scheduled intercollegiate football game between the University of Wyoming football team and the Brigham Young University football team to be played at Memorial Stadium, University of Wyoming, Laramie, Wyoming, on the afternoon of October 18, 1969, in specific protest demonstration against certain claimed religious beliefs of the Mormon Church and Brigham Young University, and,

(2) that they would not return to the University of Wyoming football team so long as the defendant Lloyd Eaton remained as Head Football Coach at the University of Wyoming.

The Court finds that the plaintiffs' complaint and claim for relief is insubstantial in that the sole and determinative constitutional issue involved and compelled upon the defendants, as officers and agents of the University of Wyoming and the State of Wyoming, was that of permitting and allowing the fourteen plaintiffs, under the guise of First Amendment rights of freedom of speech, to undertake a protest-demonstration against claimed religious beliefs of the Mormon Church and Brigham Young University, which is owned and operated by said church, during an intercollegiate football game upon the playing field, which is a tax supported facility of the State of Wyoming. The Court finds that had the defendants, as governing officials of the University of Wyoming, an agency of the State of Wyoming, acceded to the demands of the fourteen plaintiffs aforesaid, such action would have been violative of the First Amendment of the United States Constitution prohibiting the establishment of religion, mandating upon the states the principle of separation of church and state and the requirement of complete neutrality and that it would have been further violative of Article 7, Section 12 of the Wyoming Constitution directing that no sectarian tenets or doctrine shall be taught or favored in any public school or institution, Article 21, Section 25 of the Wyoming Constitution which guarantees perfect toleration of religious sentiment, and provides that no inhabitant of the State of Wyoming shall ever be molested in person or property on account of his or her mode of religious worship, and Article 1, Section 18 of the Wyoming Constitution which guarantees the free exercise and enjoyment of religious profession and worship

without discrimination or preference. The Court further finds that the neutrality and the separation of church and state principle which requires that the wall be maintained and kept high has been fully enunciated and is controlling in relationship to the facts of this case, rendering the plaintiffs' complaint insubstantial and without merit under decisions rendered by the United States Supreme Court. (Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed. 2d 228; Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601; McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844; Everson v. Board of Education, etc., 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, 168 A.L.R. 1392; Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954; Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982.

It is therefore ordered that the defendants' motion to dismiss be, and the same is hereby, granted.

It is further ordered that the counterclaim of the defendants filed herein be, and the same is hereby, dismissed.

It is further ordered that each of the parties pay their own costs.