Joe Harold WILLIAMS et al., Plaintiffs-Appellants,

v.

Lloyd EATON, as Football Coach of the University of Wyoming, et al., Defendants-Appellees.

No. 297–70.

United States Court of Appeals, Tenth Circuit.

May 14, 1971.

C. Thomas Bastien, Denver, Colo. (David J. Hahn, Denver, Colo., with him on the brief), for plaintiffs-appellants.

James E. Barrett, Atty. Gen. of Wyoming, Cheyenne, Wyo., for defendants-appellees.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

On October 18, 1969, a football game was scheduled in Laramie, Wyoming, between the University of Wyoming (hereafter the University) and Brigham Young University (hereafter BYU). BYU is a university located at Provo, Utah, and is owned and operated by the Church of Jesus Christ of Latter-Day Saints. This controversy involves the complaint of Black athletes at the University against alleged racial policies of the Mormon Church and by athletes playing for BYU. And the case concerns also a "football coaching rule" of the Wyoming University Coach that football players at the University should not participate in demonstrations or protests.[1] Shortly before the scheduled game with BYU the Black athletes at the University had a disagreement with the Coach about the wearing of the armbands as a protest against alleged Mormon beliefs and alleged acts of BYU players and were dismissed from the team, the dismissal being sustained by the University Trustees. The Black athletes then brought this civil rights suit.

---

1. Defendants' answer described the football coaching rule of the football coaching staff of the University of Wyoming as one " * * * prohibiting demonstrations or protests by members of the University of Wyoming football team."

### The District Court proceedings and issues on appeal

This case arose as a civil rights action under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983 for alleged violations of plaintiffs' Federal constitutional rights by their dismissal from the University football team which plaintiffs allege was due to the wearing of black armbands in protest against the views of the Mormon Church at a meeting the day before the game. The complaint sought interlocutory and permanent injunctive relief, a declaratory judgment and damages. Plaintiffs are fourteen of the Black athletes at the University and the defendants are the football coach, defendant Eaton (hereafter the Coach), the University Athletic Director, the Trustees of the University, its President and the State of Wyoming.[2] Since we feel that the pleadings are of substantial importance we turn to a discussion of their allegations in detail.

The complaint averred that on Friday morning preceding the game plaintiff Williams and thirteen other Black football players entered the coaching offices at the University in civilian clothes wearing armbands; that Williams asked the Coach to discuss the matter of the BYU protest with the fourteen players; that during a subsequent discussion with them the Coach advised the Black athletes that they were dismissed from the football squad for wearing black armbands.

The complaint alleged that such action was a deprivation of plaintiffs' right to peaceably demonstrate under the Constitution of the United States; that they were suspended from the football team without cause and for the sole reason that they wore armbands in peaceable and symbolic demonstration; that the dismissal was without a proper hearing or notice of any charges and without an opportunity being afforded for the plaintiffs to present evidence in their behalf; and that the action was in violation of their rights under the First, Ninth and Fourteenth Amendments of the Federal Constitution and various provisions of the Wyoming Constitution. It was further alleged that the suspension and dismissal of the plaintiffs had the effect of and was intended to penalize them for exercising such rights, and to compel conformance to undefined concepts of personal behavior set by the Coach, the Athletic Director, the University President and the Trustees. The complaint charged further the policy of the Coach and the subsequent ratification of his action by the Trustees amounted to an administrative requirement that was vague and over-broad with a chilling effect on the exercise of First and Ninth Amendment rights. The complaint prayed for convening of a three-judge court, a restraining order and preliminary and permanent injunctions, a declaratory judgment that the dismissal of the athletes by the University was unconstitutional, for damages in the amount of $75,000 for each plaintiff and punitive damages.

By their answer defendants admitted the jurisdiction invoked but denied any violation of plaintiffs' constitutional rights. Among other things they alleged that the action of the Trustees dismissing plaintiffs from the football team was taken after a full and complete hearing and presentation by each plaintiff and by others for them; that such action continued in force their athletic scholarships, subject to later review; that plaintiffs had stated they would not rejoin the team unless permitted to wear the armbands during the game with BYU, and that they would not rejoin if defendant Eaton remained as Coach; that plaintiffs' demands were in violation of their written scholarship agreements, entered with knowledge of the football coaching rule against their participation in protests and demonstrations; and that plaintiffs' dismissal by the Coach had not been solely based or predicated on the fact that plaintiffs were wearing black

2. On their motion this appeal has been dismissed as to plaintiffs John M. Griffin, Donald K. Meadows and Theodor T. Williams.

armbands when they first met with the Coach on the matter.

The answer further claimed that if the defendants had acceded to the demands of the plaintiffs, they would have acted as State officers and agents contrary to the First Amendment prohibition against State establishment of any religion and its guarantee for free exercise of religion, and like provisions of the Wyoming Constitution. Also the answer averred that the complaint failed to allege facts constituting a cause of action on which damages could be awarded for the reason that the defendants are all "immune from such suit." Further the verified answer denied that plaintiffs sustained any damage and denied the allegation of the verified complaint that the amount in controversy exceeds $10,000, exclusive of interest and costs. By counterclaim defendants prayed for injunctive relief against further false or inflammatory statements by plaintiffs' claims that the defendants had denied plaintiffs' constitutional rights and had practiced racial discrimination against them.

The District Court held an evidentiary hearing on the application for a temporary restraining order. On conclusion of the hearing the Court denied the application for the restraining order and for a three-judge court. Then after answering the defendants filed a "Motion to Dismiss and/or for Summary Judgment." The Court granted leave for the filing of supporting and opposing affidavits. After the affidavits were filed and on consideration of them and the transcript of hearing on the restraining order the Court entered its "Order Granting Motion To Dismiss (With Findings)." 310 F.Supp. 1342.

The Order of Dismissal stated that it was granted for two reasons (1) that the complaint failed to state a claim on which relief can be granted, there being immunity of the State and the individual defendants from suit under the Eleventh Amendment and Wyoming law; and (2)

that the complaint should be dismissed for lack of jurisdiction for the reason that the claim for damages is insubstantial and totally speculative, which reason was supported by detailed findings of fact made from the testimony and affidavits. The counterclaim of defendants was also dismissed and no cross-appeal from that part of the order was taken.

In its findings in support of the second ground for dismissal of the plaintiffs' claims, the Court said that "based upon the test of credibility, the operative facts, from the whole of this record * * * " [3] that these facts were found; that the plaintiffs had never previously protested against the rule of the Coach that University athletes not participate in demonstrations or protests; that the Black athletes had been wearing armbands at the meeting with the Coach when they were dismissed from the football team; that the armbands were worn in specific protest against specific beliefs of the Mormon church and BYU, with intent on the part of the plaintiffs to demonstrate during the scheduled game; and that they were notified by the Coach that they were dismissed from the team for undertaking such demonstration-protest; and that the plaintiffs stated during an emergency meeting of the Trustees that they would not return to the football team unless they were permitted to wear the armbands or so long as the defendant Eaton remained as football coach at the University. The Court found that had defendants acceded to the demands of the plaintiffs, such action would have been violative of the First Amendment principles requiring neutrality in religious matters and similar provisions in the Wyoming Constitution, and that the plaintiffs' damage claims were therefore insubstantial. We note here that opposing testimony and affidavits for the plaintiffs conflicted with proof of the defendants in several particulars and that the plaintiffs denied

3. 310 F.Supp. at 1350.

that they had insisted on wearing the armbands during the game.

The plaintiffs brought this appeal and we view it as involving these principal questions:

(1) Whether the Eleventh Amendment or Wyoming law afford immunity to the defendants from the civil rights claims seeking injunctive and declaratory relief and damages for allegedly unconstitutional acts;

(2) whether the complaint stated any claim for relief under the First Amendment and Federal constitutional decisions on freedom of expression;

(3) whether the order was proper as a dismissal for failure to state a claim for relief or as a summary judgment; and

(4) whether the First Amendment establishment and free exercise clauses and similar Wyoming provisions required and justified defendants' actions.

## The Eleventh Amendment and The Wyoming Constitution

We turn first to the holding of the District Court that this action was barred by the immunity from suit conferred by the Eleventh Amendment and the Wyoming Constitution. See 310 F.Supp. at 1349–1350. The principal provisions are set out in the margin.[4] The Wyoming constitutional provision referred to states that "[s]uits may be brought against the state in such manner and in such courts as the legislature may by law direct." Art. 1, § 8, Wyo. Constitution. And the State statutes declare that any action permitted by law against the University Trustees and several other named agencies "is hereby declared to be an action against the State of Wyoming and hereafter no action shall be brought against any of such boards, commissions or trustees except in the courts of the State of Wyoming and no action shall be maintained against any of such boards, commissions or trustees in any other jurisdiction." § 1–1018, Wyo. Statutes of 1957.[5]

4. The Eleventh Amendment to the Federal Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects or any Foreign State."

While one of the plaintiffs was a Wyoming resident, the Amendment as expanded applies to this suit by him, as well as to the remaining plaintiffs, who are non-residents of the State. See Parden v. Terminal Ry. Co., 377 U.S. 184, 186, 84 S.Ct. 1207, 12 L.Ed.2d 233.

Article 1, § 8 of the Wyoming Constitution provides:

"8. Courts open to all; suits against state.—All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct."

5. § 1–1018, Wyoming Statutes of 1957, provides:

"§ 1–1018. Actions against state agencies deemed actions against state;

jurisdiction.—Any action permitted by law, which shall be brought against Wyoming farm loan board, board of land commissioners, state board of charities and reform, public service commission of Wyoming, state board of equalization of Wyoming, or the trustees of the University of Wyoming is hereby declared to be an action against the State of Wyoming and hereafter no action shall be brought against any of such boards, commissions or trustees except in the courts of the State of Wyoming and no action shall be maintained against any of such boards, commissions or trustees in any other jurisdiction."

The Board of Trustees of the University is constituted a body corporate and given numerous powers by §§ 21–352 and 21–353, Wyo. Statutes of 1957. They are empowered to appoint a person to examine and approve payment of all legal claims against the corporation, among other things. However, there is no provision in these statutes authorizing suits against the Trustees. We find no statute dealing with the Coach or the Athletic Director of the University.

■ ■ Thus, by law immunity of the Trustees from suit is waived only as to such actions "in the courts of the State of Wyoming." We do not feel the immunity was waived as to the suits in the Federal Courts. Such waiver provisions are strictly construed. Harrison v. Wyoming Liquor Commission, 63 Wyo. 13, 177 P.2d 397, 399; Hamilton Manufacturing Co. v. Trustees of State Colleges in Colorado, 356 F.2d 599 (10th Cir.). Where there is no clear intent in such a waiver of immunity statute to subject the state agencies to actions in the Federal Courts such suits may not be maintained. Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862; Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389; Great Northern Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121; Murray v. Wilson Distilling Co., 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742.

In facing this issue appellants' first contend that the immunity conferred by the constitutional provisions has been waived by defendants in this suit. The argument is that the answer admitted the jurisdiction invoked and that the defendants also sought affirmative relief by the prayer for an injunction so that the immunities were waived. At this point we note that the answer alleged that the defendants were immune from suit.

This waiver question turns on Wyoming law as to whether an authorization for such waiver was given by State law. Ford Motor Co. v. Department of Treasury of Indiana, supra, 323 U.S. at 467, 65 S.Ct. 347. The Wyoming Constitution seems clear in its provision that amenability to suit is granted "in such manner and in such courts as the legislature may by law direct." Despite the inequities that the immunity may produce, it " * * * is so well established in this state that any change must be effected by the legislature rather than by the courts." Denver Buick, Inc. v. Pearson, 465 P.2d 512, 514 (Wyo.); Bondurant v. Board of Trustees of Memorial Hospital, 354 P.2d 219 (Wyo.). Such waiver must be by an express legislative provision. Hjorth Royalty Co. v. Trustees of University, 30 Wyo. 309, 222 P. 9, 11.

■ There is no Wyoming statute waiving the immunity from this type of suit in the Federal Court. The plaintiffs point to the general provision in § 9–132, Wyo. Statutes of 1957, authorizing the Attorney General to go into State or Federal Court to prosecute or defend suits on behalf of the State whenever its interests would be best served by so doing. However, we are not persuaded that this statute constitutes the required waiver or authorizes waiver by the Attorney General in view of the State constitutional requirement for waiver by statute and the strict construction of statutes dealing with such waivers. Harrison v. Wyoming Liquor Commission, supra; Hamilton Manufacturing Co. v. Trustees of State Colleges in Colorado, supra. We feel that the Attorney General was not authorized to waive the immunity conferred by the Eleventh Amendment, if such waiver was made by the pleading. See Utah Construction Co. v. State Highway Commission, 45 Wyo. 403, 19 P.2d 951, 955 and Ford Motor Co. v. Department of Treasury of Indiana, supra, 323 U.S. at 468, 65 S.Ct. 347. Therefore, we must consider the impact of the constitutional provisions on immunity from suit.

■ Insofar as the claims for injunctive and declaratory relief are concerned, the principles are well established. "It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of that amendment." Smyth v. Ames, 169 U.S. 466, 518, 18 S.Ct. 418, 422, 42 L.Ed. 819; see also Ex parte Young, 209 U.S. 123, 155–156, 28 S.Ct. 441, 52 L.Ed. 714; Larson v. Domestic & Foreign Corporation, 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628; McCoy v. Louisiana State Board of Education, 332 F.2d 915 (5th

Cir.); and School Board of City of Charlottesville, Va. v. Allen, 240 F.2d 59, 62–63 (4th Cir.). And if the plaintiffs establish a violation of Federal constitutional rights and entitlement to relief under the Federal civil rights acts, the Wyoming Constitution may not immunize the defendants and override the Federal constitutional principles in view of the Supremacy Clause. Therefore, if a violation of Federal constitutional rights is established by plaintiffs, the immunity under the Eleventh Amendment and the Wyoming Constitution would not bar injunctive or declaratory relief against the defendants other than the State of Wyoming. McCoy v. Louisiana State Board of Education, supra, and Dorsey v. State Athletic Commission, 168 F.Supp. 149 (E.D.La.), aff'd 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028. And the Federal Court would have jurisdiction to grant such relief, even though the claim for money damages is barred by the immunity, as we discuss below. See Hopkins v. Clemson Agricultural College, 221 U.S. 636, 649, 31 S.Ct. 654, 55 L.Ed. 890.

■ With respect to the State of Wyoming, we are satisfied that the dismissal was proper. In view of the principles of the Eleventh Amendment relief could not be granted against the State itself, and the State is not a person within the meaning of the civil rights statute. 42 U.S.C. § 1983; Whitner v. Davis, 410 F.2d 24, 29 (9th Cir.).

■■ The claims for money damages present a more difficult problem. In some circumstances State officers may be sued for money damages as individuals under the civil rights statutes. See Whitner v. Davis, supra at 30. And since suits for injunctive relief against unconstitutional acts by State officers are not viewed as unconsented suits against the State under the authorities cited above, some courts have held that a claim against them for money damages may also be maintained on the ground that the immunity does not shield unconstitutional action. See, e. g., Sostre v.

Rockefeller, 312 F.Supp. 863, 879 (S.D. N.Y.), and cases there cited.

However, we feel that the basis for allowing equitable suits against unconstitutional action is that they merely enjoin such acts, and we believe the result is different where the relief sought would "expend itself on the public treasury or domain, or interfere with the public administration. Ex parte New York, 256 U.S. 490, 500, 502, 41 S.Ct. 588, 590, 591, 65 L.Ed. 1057." Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209. When the action in essence is for recovery of money from the State the immunity is available even though individual officials are nominal defendants. See Ford Motor Co. v. Department of Treasury of Indiana, supra, 323 U.S. at 464, 65 S.Ct. 347; Hamilton Manufacturing Co. v. Trustees of State Colleges in Colorado, supra; and Westberry v. Fisher, 309 F.Supp. 12, 18–20 (D. Me.); contra, Sostre v. Rockefeller, supra.

■ The complaint before the District Court named defendants Eaton (the Coach), Jacoby (the Athletic Director), and the several Trustees and President of the University by name and with express description of their positions. Brief allegations were made also about their official functions. Each paragraph describing these several defendants concluded with the statement that he or they were sued in their official capacity. The District Court concluded that the complaint does not contain any allegation that the defendants were personally liable. 310 F.Supp. at 1350. We agree, finding no averment in the complaint that may reasonably be interpreted as asserting a claim for money damages against these defendants in their individual capacities. Since the money claim alleged was directed solely against them in their official capacities, and since there was no waiver of immunity of such State officers or agents from suit, we conclude that the dismissal as to the claims for money damages against them was proper.

*The First Amendment and Federal Constitutional Decisions on Freedom of Expression*

The starting point for weighing the constitutional claim of the plaintiffs is Tinker v. Des Moines Independent School District, et al., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731. At least with respect to the allegations of the complaint before us, the *Tinker* case bears obvious similarities in that the claimed right was there asserted for the wearing of black armbands to protest the Government's policy in Vietnam. The plaintiffs were suspended for wearing armbands. Nominal damages and an injunction were sought against enforcement of a regulation that students would be requested to remove protest armbands and that they would be suspended until their removal.

After an evidentiary hearing the District Court dismissed the complaint on the ground that the action of the school authorities was reasonable in order to prevent disturbance of school discipline. The Eighth Circuit affirmed without opinion, being equally divided. The Supreme Court reversed, holding that First Amendment rights of expression were violated and that there was no showing or finding that the conduct in question would materially interfere with school discipline. Because of its controlling significance in this case, we refer to the following reasoning of the Supreme Court:

"First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the school-house gate." (393 U.S. at 506, 89 S.Ct. at 736)

\* \* \* \* \* \*

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained. Burnside v. Byars, supra, [363 F.2d] at 749." (393 U.S. at 509, 89 S.Ct. at 738)

\* \* \* \* \* \*

" \* \* \* A student's rights, therefore, do not embrace merely the classroom hours. When he is in the cafeteria, or on the playing field, or on the campus during the authorized hours, he may express his opinions, even on controversial subjects like the conflict in Vietnam, if he does so without 'materially and substantially interfer[ing] with the requirements of appropriate discipline in the operation of the school' and without colliding with the rights of others. Burnside v. Byars, supra, [363 F.2d] at 749. But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech. Cf. Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (C.A.5th Cir. 1966)." (393 U.S. at 512–513, 89 S.Ct. at 740)

See also Burnside v. Byars, 363 F.2d 744 (5th Cir.); Saunders v. Virginia Polytechnic Institute, 417 F.2d 1127 (4th Cir.); Aguirre v. Tahoka Independent School District, 311 F.Supp. 664 (N.D. Tex.); and Frain v. Baron, 307 F.Supp. 27 (E.D.N.Y.).

Plaintiffs' averments have been outlined in detail. Their allegations and affidavits in essence said that they were dismissed from the football team by the Coach during their meeting with him; that he stated that they were dismissed from the squad for wearing black arm-

bands; and plaintiffs averred that their dismissal from the team was without cause and for the sole reason that they wore armbands in peaceable and symbolic demonstration. Defendants' answer made general denial covering such allegations.

There was no showing before the District Court of the plaintiffs' conduct producing or that it likely would produce any disturbance interfering with school discipline or the interests which the authorities are entitled to protect, under the principles of the *Tinker* case.[6] Whether such circumstances may have existed was a matter that was not established conclusively so that a summary judgment could be entered against the plaintiffs.[7] And whether at trial circumstances may be established justifying the defendants' actions under the standards of *Tinker* and similar cases, we cannot say. Nevertheless, for reasons discussed more fully below, dismissal for insufficiency of the allegations or by way of summary judgment was inappropriate.

In the light of the principles of the *Tinker* case and similar authorities, we cannot say that the complaint fails to state a claim on which relief could be granted or that summary judgment was proper.[8]

We have considered our opinion in Jones v. Hopper, 410 F.2d 1323, cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399, involving a civil rights claim where infringement of First Amendment rights was alleged by refusal to reappoint a professor, assertedly because of speeches and writings offensive to the Trustees. Jones v. Hopper held the complaint insufficient in view of the statutory authority of the Trustees to appoint, remove, discharge and suspend professors, and in view of the lack of any contractual arrangement for renewal of the professor's employment. Here, however, plaintiffs alleged irreparable harm from their dismissal from the team in that their ability to promote their careers, practice and perform their skills has been denied them, and that the dis-

6. President Carlson testified that the Coach had said at the meeting with the Trustees the night before the game that he had called the rule against protests and demonstrations to the attention of the team at least three other times in the last year, * * * "[t]he reason being that he felt that this would have an adverse effect upon team unity, upon their grades, if they were involved in protests and such things as this. This was at spring practice, at the end of spring practice in 1969."

There also was testimony at the hearing on the application for the restraining order by he University President on the *football coaching rule* which included the statement that "Coach Eaton said that in order to maintain proper discipline on the football team he had certain rules and regulations, and this was one of them."

The order of the District Court included findings that " * * * the Board further found that the football coaching rule was imposed for disciplinary purposes looking to the unity of the football team and that the plaintiffs had been well aware and had full knowledge of the existence of the coaching rule * * * " · 310 F.Supp. at 1347. We are not persuaded that these statements and

findings so established that there was or would have been any material disruption of class work, substantial disorder of invasion of the rights of others as to justify a summary judgment against the plaintiffs. Tinker v. Des Moines School District, supra, 393 U.S. at 513, 89 S.Ct. at 740.

7. As discussed below, the District Court considered matters beyond the pleadings so that the ruling must be viewed as a summary judgment.

8. We note also plaintiffs' claim that the football coaching rule was unconstitutional for over-breadth and vagueness. The reason for the plaintiffs' dismissal from the team and the manner of the application of the rule are within the area of factual dispute, although the rule iteslf in broad terms was admitted by the defendants. Until the facts and circumstances surrounding the application of the rule to the plaintiffs are decided and the reasons for their dismissal determined, the claim of impingement on First Amendment rights by general prohibition against protests or demonstrations by the players may not be dismissed as wholly insubstantial. See Sword v. Fox, 317 F.Supp. 1055, 1062–1067 (W.D.Va.), and cases there cited.

missal caused them to lose their chance to be observed by scouts as potential professional football players during the 1969 football season, and has caused them emotional and mental stress and anxiety. The answer alleged the existence of written athletic scholarship agreements, stating, however, that they had been continued in force subject to further review. Nevertheless, we view the interests and injuries averred by these plaintiffs as distinguishing the case from Jones v. Hopper.

### Propriety of the Order of Dismissal

■ As indicated above, the District Court order stated that the complaint was dismissed for failure to state a claim on which relief could be granted. 310 F. Supp. at 1349–1350. However, "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; Parkinson v. California Co., 233 F.2d 432 (10th Cir.); and see Jones v. Hopper, supra, 410 F.2d at 1327. The allegations must be taken as true and all reasonable inferences from them must be indulged in favor of the complaint. See Olpin v. Ideal National Insurance Co., 419 F.2d 1250 (10th Cir.), cert. denied, 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809; and Virgin Islands Corporation v. W. A. Taylor & Co., 202 F.2d 61 (2d Cir.). And viewing the allegations of the complaint under the principles of the *Tinker* case and similar authorities, we feel that dismissal for failure to state a claim may not be sustained.

However, the order of the District Court and the record persuade us that the Court followed the procedure mentioned in Rule 12(b), F.R.Civ.P., and treated the motion as one for summary judgment. The Court afforded the parties opportunity to submit affidavits, and gave detailed consideration to the pleadings, the transcript of the temporary restraining order hearing, and the affidavits. Since matters outside the pleading were presented and not excluded by the Court but considered by it, the motion was treated as one for summary judgment. Rule 12(b); Ryan v. Scoggin, 245 F.2d 54 (10th Cir.); Whitner v. Davis, supra.

■ Viewing the order as granting summary judgment, we believe it may not be sustained as to the claims against the State officers for equitable and declaratory relief. There were disputed issues of substantial importance that remained. The plaintiffs alleged and stated by affidavit that they were discharged for wearing the armbands at the time of the meeting with the Coach. The defendants, however, alleged and stated by affidavit that the plaintiffs insisted that they would not rejoin the team unless they were permitted to wear the armbands during the game; that they would not rejoin if the Coach remained in his position; and that if defendants had acceded to the demands relating to the armbands, they would have violated constitutional principles on neutrality in religious matters—thereby raising an issue on causation. Thus a central issue of fact was unresolved and remained for disposition by trial.[9]

Summary judgment was proper only if no material issue of fact remained and a formal trial would have been fruitless. Rule 56, F.R.Civ.P.; Sartor v. Arkansas Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967; Frey v. Frankel, 361 F.2d 437, 442 (10th Cir.). The summary procedure " * * * does not serve as a

---

9. An affidavit submitted for plaintiffs stated that at the time of the meeting with the Trustees the plaintiffs had indicated they thought they were entitled to wear the armbands during the game, but that they had not planned to do so if the Coach refused to permit such action. This affidavit also stated that the plaintiffs had not said they would wear the armbands against the directions of the Coach or the Trustees if returned to the game.

substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits." Bushman Construction Co. v. Conner, 307 F.2d 888, 892 (10th Cir.); Frey v. Frankel, supra, 361 F.2d at 442. We cannot agree that the making of findings and the dismissal—which was in effect a summary judgment—was proper.

■ On appeal the defendants have argued that the findings of fact in the order were not clearly erroneous but are supported by substantial evidence and justify an affirmance. However, the findings were not made after trial and so the provisions of Rule 52(a), F.R.Civ.P., according respect to such findings, do not apply. 3 Barron and Holtzoff, Federal Practice and Procedure, 202 (Charles A. Wright, rev. ed. 1958). Instead, they were made only on consideration of the pleadings, affidavits and the transcript of the hearing on the application for a temporary restraining order, which had been earlier denied. Although there had been an adversary hearing on the temporary restraining order application, a finding based on the interlocutory hearing would not serve as the ground for a final judgment. See Sooner State Dairies, Inc. v. Townley's Dairy Co., 406 F.2d 1328 (10th Cir.).

*Religious Beliefs and Restrictions of the Free Exercise and Establishment Clauses*

The remaining principal issue concerns the First Amendment free exercise and establishment clauses which were binding on defendants as State officers, Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, and like provisions of the Wyoming Constitution. The defendants claimed that the constitutional provisions on religion prohibited acceding to the plaintiffs' demands, to avoid favoring a religious belief or interfering with such beliefs of others. The District Court upheld the defense of the actions by the State officers under these constitutional provisions. Its order concluded that had the defendants acceded to plaintiffs' demands (found to have included the right to wear the armbands during the game), then defendants' action would have been violative of the establishment clause and its requirement of complete neutrality in religious matters. The order held also that such action would have violated like provisions on religious toleration and free exercise in the Wyoming Constitution. 310 F.Supp. at 1352–1353.

■ The Federal Constitution enjoins strict neutrality on State officials in matters of religious belief. Epperson v. Arkansas, 393 U.S. 97, 103–104, 89 S.Ct. 266, 21 L.Ed.2d 228; Abington School District v. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 10 L.Ed.2d 844; Everson v. Board of Education, 330 U.S. 1, 14–15, 67 S.Ct. 504, 91 L.Ed. 711. The *Abington* opinion says the constitutional ideal is " * * * absolute equality before the law, of all religious opinions and sects * * *. The government is neutral, and, while protecting all, it prefers none, and it *disparages* none." 374 U.S. at 215, 83 S.Ct. at 1567. "It may not be hostile to any religion * * *" Epperson v. Arkansas, supra, 393 U.S. at 104, 89 S.Ct. at 270. Of course, these constitutional restrictions applied through the Fourteenth Amendment govern only State action. The First Amendment provisions would be implicated only if the State has been significantly involved by defendants' actions. Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed. 2d 830; Adickes v. S. H. Kress & Co., 398 U.S. 144, 170–171, 90 S.Ct. 1598, 26 L.Ed.2d 142.

■ We do not feel that the present record supported a summary disposition on the ground that these First Amendment principles required or justified the defendants' actions. While we realize the importance of the principles which the District Court was properly considering, the facts relating to them were in significant conflict. After trial ultimate findings may show that the plaintiffs were dismissed from the team because of their demands to wear the armbands during the game. And it may be found that permission therefor by the defendants would have been recognized as a sig-

nificant involvement of the State officers in an expression of hostility to the religious beliefs of others.[10] Such findings may justify the defendants' actions on the constitutional principles of religious neutrality. However, such close and delicate constitutional questions should be decided when the facts are fully developed at trial.

### Conclusion

Accordingly the order is affirmed with respect to the dismissal as to the State of Wyoming, and with respect to the dismissal as to the claims for money damages against the State officers; the order is vacated with respect to the dismissal of the claims against the State officers for equitable and declaratory relief; and the cause is remanded for further proceedings.

---

10. Plaintiffs' brief suggests that instead it might be concluded that they were protesting against manifestations of racism that plaintiffs saw in BYU and its football team.